[L. A. No. 2717. In Bank.—June 12, 1912.]

JOSEPH METZLER, Appellant, v. M. P. THYE, Doing Business Under the Name of M. P. THYE & CO., Respondent.

LEASE — INSTALLATION OF MACHINERY.—The words "install" and "installation," when applied to machinery have a technical meaning and when so used in a lease should be interpreted accordingly.

ID.—COVENANT BY LESSEE TO INSTALL SIDEWALK ELEVATOR—LESSOR NOT OBLIGATED TO PREPARE PREMISES.—A covenant in a lease by the lessee to install an elevator "from the basement to the sidewalk in front of" the demised building, should be construed as meaning

that he would provide a suitable lift, with the usual accessories connecting the basement of the building which he occupied as tenant, with the sidewalk in front of it, without any obligation being imposed upon the lessor of preparation of the premises for the reception of the machinery.

ID.—EXPENSE OF WORK NOT ANTICIPATED.—The fact that compliance with such covenant would involve greater expense than he anticipated would not excuse the lessee for his nonperformance.

ID.—GENERAL COVENANT PROHIBITING ALTERATIONS.—A general covenant in such lease prohibiting the lessee from making alterations in the premises without permission of the lessor is subject to and modified by the special agreement regarding the installation of the elevator, and the failure of the lessor to grant the lessee permission to make the changes in the building necessary and incidental to putting in the elevator, would not excuse its noninstallation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, for Appellant.

Frank Herald, and W. W. Wideman, for Respondent.

MELVIN, J.—Defendant became the lessee of certain premises in the city of Los Angeles. During the term of his lease plaintiff bought the property and succeeded to all of the rights of the lessor. After the term of the lease and surrender of the premises by defendant this suit was brought for damages alleged to be due for injuries to the property beyond reasonable wear and tear and for the failure of defendant to install a certain sidewalk elevator, as provided by the terms of the written lease. The superior court gave judgment in favor of defendant and plaintiff appeals therefrom.

There is no attack upon the finding that the lessee had not injured the premises beyond reasonable wear and tear, the only point of controversy here being with reference to the interpretation given by the trial court to the covenant in the lease respecting the sidewalk elevator. The appeal is upon the judgment-roll alone and as the court found that there was no agreement respecting the installation of the elevator except that expressed in the lease, we must construe that in-

strument in the light of this finding. In his answer defend-
ant admitted that no elevator had been put in position but
pleaded as an excuse for his failure to comply with the re-
quirement of the lease in that regard that, although he was
ready at all times during the term of his tenancy to fulfill
his obligation, plaintiff had prevented him from so doing by
neglecting to prepare the premises for the reception of the
elevator. The requirement of the contract of lease was that
defendant within six months from the first of November,
1905, should "install a sidewalk elevator from the basement
to the sidewalk in front of said premises." The court found
that neither plaintiff nor his predecessor in interest prepared
or offered to prepare the premises for the reception of an
elevator, and that "before said elevator could be installed
it would have been necessary to make certain changes in the
building on said premises, to remove a part of the foundation
wall under said building, to excavate under the sidewalk and
build a wall around such excavation and an arch over the
portion of said foundation wall to be removed as aforesaid,
in order to prepare a place for the installation of said eleva-
tor; and that it would have been further necessary to place
trap doors in said sidewalk." It will thus be seen that the
whole controversy turns upon the meaning of the word "in-
stall." Appellant insists that since all things necessary to
carry a contract into effect are implied therefrom (Civ. Code,
sec. 1656) and since the contract is to be "interpreted most
strongly against the promisor," in cases of uncertainty (Civ.
Code, sec. 1654), therefore this court, as matter of construc-
tion should give to the word "install" a force including all
things necessary to the carrying out of defendant's promise.
The words "install" and "installation" when applied to ma-
chinery have a technical meaning and should be interpreted
accordingly. (Civ. Code, sec. 1645.) Webster's New Stand-
ard Dictionary gives these definitions: "Install—to set up or
fix in position for use or service; as to install a heating or
lighting system." "Installation—the whole of a system of
machines, apparatus and accessories set up and arranged for
working, as in electric lighting, transmission of power, etc."
Other lexicons define these words quite similarly. When,
therefore, defendant agreed to install an elevator "from the
basement to the sidewalk in front of said premises" he meant

that he would provide a suitable lift, with the usual accessories connecting the basement of the building which he occupied as tenant, with the sidewalk in front of it. We see no room for an interpretation imposing upon appellant the duty of preparation of the premises. If a tenant under a lease of a farm should agree to sow a crop, the contract would scarcely be interpreted to mean that the landlord should plow the land, and buy the seed, leaving the promisor only the duty of spreading it. The implication in the contract before us, though perhaps not quite so strong, is as clear as that which would arise in the one cited by way of illustration. Words expressing a promise to build an improvement do not, as a rule, indicate the intent of the parties to the contract that a mere structure should be erected, but that the improvement should be adapted to the use to which it is generally applied. For example, where a railroad company promised to ''erect'' a station, the covenant was held to be one imposing upon the corporation the duty of building and establishing a regular station. (*Port Huron & Northwestern Ry. Co.* v. *Richards,* 90 Mich. 577, [51 N. W. 680].) It is true that the context in the case just cited was somewhat more illuminating of the meaning of the word ''erect'' as used in the agreement there considered, than are the other portions of the contract before us, as indicating the exact meaning of the word ''install'' intended by the parties thereto. But we believe that the principle announced in the Michigan case is entirely applicable here.

The fact that compliance with his contract would involve greater expense than he anticipated would not excuse defendant. Parties *sui juris* cannot escape performance of their undertakings because of unforeseen hardship. (*Johnson* v. *Bryant,* 61 Ark. 315, [32 S. W. 1080].) Where one contracts to furnish capital, a financial panic does not excuse performance. (*McCreery* v. *Green,* 38 Mich. 172. See, also, 2 Parsons on Contracts, 9th ed., 826; 3 Page on Contracts, paragraph 1378; 1 Beach on Contracts, paragraph 216.)

The lease here considered provided that no alterations in the premises might be made without permission of the lessor, and the court found that plaintiff never granted leave to defendant to make the changes which would be necessary and incidental to putting in an elevator; but the failure of plain-

tiff to grant such permission would not be a good defense. The general covenant in the lease with reference to alterations would, of course, be subject to and modified by the special agreement regarding the installation of the elevator.

The judgment is reversed.

Henshaw, J., Lorigan; J., Shaw, J., Angellotti, J., and Sloss, J. concurred.