# JAMES McEVOY

## *vs.*

## WILLARD E. HARN COMPANY, INC., A Body Corporate.

*Building contracts: agreement to arbitrate; waiver; estoppel.*

In a suit on a building contract, if the defendant has waived his right to arbitration, he can not afterwards reassert the right or rely as a defense upon the refusal of the plaintiff to submit the question to arbitration.                    p. 98

*Decided June 23rd, 1916.*

Appeal from the Baltimore City Court.   (GORTER, J.)

The facts are stated in the opinion of the Court.

Following are the prayers and instructions referred to in the opinion of the Court:

*Plaintiff's 3rd Prayer.*—The jury are instructed if they find from the evidence that the architect mentioned in evidence requested the plaintiff to submit prices for certain extra work to be done in and about the building being erected by the defendant, and that the plaintiff in response to said request, submitted in writing to said architect, at the times mentioned in evidence, estimates of the cost of doing said extra work, and shall further find that said architect consulted said defendant with reference thereto, and that said defendant approved of the same and authorized said architect to have said extra work done at the prices named, and that in pursuance of said authority, said architect ordered the plaintiff to do said work at the prices named and that the plaintiff did said work, then the verdict of the jury as to all

of such items of extra work, must be in favor of the plaintiff, for an amount equal to the prices specified, with interest in their discretion.    (*Granted.*)

---

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to establish any employment of the architect, Thomas Bond Owings, as a general agent of the defendant; that the powers of the said architect to bind the defendant are limited by the contract in evidence between the plaintiff and the defendant; and that the said architect is not authorized to alter or modify the said contract or the plans or specifications which are referred to therein, nor has the said architect any authority to bind the defendant for any work or materials furnished for the building mentioned in said contract, and not shown by said plans or mentioned in said specifications; nor any authority to bind the defendant to accept work or materials of a character different from those which are shown by said plans and described in said specifications, unless, and only to the extent, that the jury shall find from the evidence that the said architect was specially authorized by the defendant to order such additional work and materials, or specially authorized by him to modify said contract, plans and specifications.    (*Granted.*)

---

*Court's 1st Instruction.*—The Court instructs the jury that if the jury find from the evidence that the plaintiff constructed the dwelling of the defendant in substantial accordance with the terms of the contract of February 11, 1914, offered in evidence and that said dwelling has been occupied and used by the defendant since October 29, 1914, and was reasonably satisfactory and acceptable to the defendant, then the plaintiff is entitled to recover the unpaid balance of the contract price less such sum as the jury find should be deducted therefrom on account of such defects as may be found by the jury in said dwelling caused by the lack of workman-

ship on the part of the plaintiff or by the use of materials other and inferior to those specified in the contract or by any omissions in work or materials or by any deviations from the plans and specifications not acquiesced in by the defendant, and shows to have made said building less valuable to the defendant; together with interest at six per cent in the discretion of the jury on such sum as the jury shall there find to be due.

*Court's 2nd Instruction.*—The Court instructs the jury that for any alterations or extras sued for and claimed in this case that the jury find from the evidence were made or furnished with the knowledge of the defendant, James McEvoy, the estimate or cost for which the defendant knew the plaintiff is entitled to recover the amount of said cost or estimate and for any of the alterations or extras made or furnished sued for and claimed in this case that the jury find from the evidence were made or furnished with the knowledge of the defendant James McEvoy or at the request of his wife if the jury find she had authority to order the same, that the defendant did not know the estimated cost thereof, the plaintiff is entitled to recover the reasonable value thereof; and for any of the alterations or extras made or furnished sued for and claimed in this case that the jury find from the evidence were done without the knowledge of the defendant, James McEvoy, notwithstanding the jury find they were ordered by the architect, the plaintiff is not entitled to recover for.

The jury may allow in their discretion interest at six per cent upon any sum they may find to be due for alterations or extras.

*Court's 3rd Instruction.*—The jury are instructed that the building of the wall around the laundry yard is included within the original contract of February 11, 1914, and therefore the plaintiff is not entitled to recover therefor the sum of $331.78 charged therefor or any part thereof.

*Court's 4th Instruction.*—Th jury are instructed that if they find from the evidence that the plaintiff was compelled

by the Building Inspector of Baltimore to build the foundation walls of the defendant's house twenty-one inches in width instead of sixteen, as specified in the contract of February 11th, 1914, then the plaintiff under the contract is not entitled to recover from the defendant the sum of $126 charged therefor or any part thereof.

*Court's 5th Instruction.*—The Court instructs the jury that under the contract the plaintiff agreed to connect the plumbing drainage with the sewer and therefore the plaintiff is not entitled to recover the sum of $90 charged therefor or any part thereof.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Kemp Bartlett* and *Joseph C. France* (with whom was *L. B. Keene Claggett* on the brief), for the appellant.

*Myer Rosenbush* and *Enos S. Stockbridge,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 9th of February, 1914, the appellant entered into a contract with the appellee, a body corporate, for the erection and construction of a brick dwelling on Wendover road and Greenway, Guilford, in Baltimore City, according to certain plans and specifications prepared by Mr. Thomas B. Owings, architect, and made a part of the contract.

The contract is set out in the record and is the approved form of contract known as "the Uniform Building Contract," and was filed by the plaintiff with the declaration in the case.

By the terms of the contract the appellee was to provide all the materials and perform all the work for the erection and completion of the building at and for the sum of $24,-020.00.

Subsequent to the execution of the contract certain extra work amounting to the sum of $6,789.34 is alleged to have been performed by the contractor at the request of the owner

and by direction of the architect, in addition to the contract price, and the items of this extra work are shown on an annexed itemized statement filed with the declaration and set out in the record now before us.

It is admitted that the defendant has paid the plaintiff the sum of $18,000 under the contract and this sum has been duly credited to him, but a balance of $12,599.84, that is, the sum of $6,020.00 upon the contract price and the sum of $6,579.84 for extra work, is claimed to be due the contractor, and it is this balance that is the cause of action of the suit and is the subject matter of this controversy.

The suit is in assumpsit and the declaration contains six common counts and the seventh a special count on the building contract.

The case was tried in the Baltimore City Court and from a judgment in favor of the plaintiff for the sum of $10,-615.22 the defendant has appealed.

During the trial twenty-four exceptions were taken by the defendant, one to the ruling of the Court upon the prayers and the others to rulings on evidence.

The issues in the case it will be seen relate and have to do as stated by the appellant in his brief with the charges for extra work and alleged defects, omissions and substitutions in the construction of the building.

The first contention of the appellant is that the refusal of the plaintiff to a submission to arbitration is a bar to his right to recover in this case.

This defense was presented by a motion on the 8th of October, 1915, on the part of the defendant at the trial for leave to file a third plea specially setting up the defense and it was also raised by the defendant's fifth prayer at the conclusion of the testimony. The motion was overruled and the case proceeded to trial under the general issue pleas.

Assuming without deciding that the claim of the plaintiff to recover for alterations and extras were matters to be referred to a board of arbitrators for decision under Articles III and XII of the contract, in case of disagreements be-

tween the owner and contractor we think the right to arbitrate was clearly waived by the defendant and this right could not be re-asserted and relied upon as a defense under the facts and circumstances of the case.

The suit it will be seen was brought on the 9th of January, 1915, and the general issue pleas under an affidavit of defense were filed on the 23rd of January, 1915. The defendant moved into the house in the early part of October, 1914, and received from the architect a certificate of approval of the payment of $4,000, being the payment due upon acceptance of the house, and on November 16th, 1914, gave his check to the plaintiff for this amount.

On the 6th of January, 1915, the architect issued his final certificate of payment as follows:

"James McEvoy, Esq.,

"Fidelity Building.

"Dear Sir:

"The final statement of the cost of your house at Guilford has been submitted to me by Willard E. Harn and Company, and I have approved it. Willard E. Harn and Company are therefore entitled to the final payment on the house, amounting to $12,599.84.

"Very truly yours,

"(Signed)   Thomas Bond Owings."

The question of arbitration does not appear to have been suggested until September 20th, 1915, over a year after the house was to have been completed and nearly a year after the defendant occupied the house. The suit was instituted on the 8th of January, 1915, and the plea was not sought to be interposed until October 8th, 1915, long after the general issue pleas had been filed and over eight months after the suit was brought.

Besides this Mr. Owings, the architect, testified, that when the witness wrote to Mr. McEvoy on October 21st, 1914, stating that "Harn's account was $29,213, included in that sum was the contract price of $24,020, and that Harn's extras as shown by his account at that time amounted to $5,193;

that Mr. McEvoy did not then or at any subsequent time complain to him about those extras; that between October 21st, 1914, and January 6th, 1915, the witness spoke to Mr. McEvoy probably five or six times and that no complaint was made by Mr. McEvoy concerning these charges for extras upon those occasions.

The witness Wm. E. Harn testified that the check for $4,000 was not paid by the bank, although presented two or three times for payment and that a joint note of defendant and wife was accepted, payable on the 3rd of January, 1915, in place of the check; that this note was not paid; it was protested and he took it up and instituted suit on it on January 9, 1915; that was on Saturday; I saw him last prior to that day on Wednesday when I asked him about the entire indebtedness, but not specially about that note; he said he was making arrangements for a loan and would pay me on Saturday; that he was making an arrangement with the Eutaw Savings Bank; that was on the Wednesday prior to the 9th of January, which would make it Wednesday, the 6th of January, 1915; there was no objection made to me at any time about the character of the work; the only thing that occurred on that Wednesday was that Mr. McEvoy made the statement that it ran into more than he thought it did and he was not prepared to meet it just then, and no objection was made to the amount of this bill to me at that time; he requested me to meet him at the Eutaw Savings Bank on Saturday morning, but I did not do so because he did not come; I was there and Mr. George Bullen, Mr. Hayden and Mr. Evans were there, Mr. Hayden being the president of the bank and Mr. Evans an officer of the bank; we waited until about 11 o'clock until we found he was not coming. Mr. Hayden or Mr. Evans, I don't know which, said it was useless to wait any longer, so we left; I tried to see Mr. McEvoy later that day; I called at his office but he was not in; I only made one attempt to see him that day.

Mr. Randolph Barton, Jr., the attorney for the Eutaw Savings Bank, who was negotiating a loan of $20,000.00 for

the appellant, testified that Mr. McEvoy consented on the 7th of January, 1915, that Mess. Harn and Co., the plaintiff, was to be present at the time of the loan, and was to receive out of the proceeds of the loan payment of the full amount due them on the building of something over $16,000.

He further testified that certain things had to be done and attended to in order to get the loan through on Saturday, and they were agreed to by the defendant as follows: "First, bond against liens; second, insurance policies; third, mortgage and notes; fourth, Harn account; fifth, Enterprise Company account;" that he does not recall very distinctly about the Enterprise Company account; that he went to the bank on the Saturday named, that the officers of the bank were present, and also Mr. Harn, but the defendant did not keep the appointment, and that he was notified by the bank on the 9th of January that the tender of the money was cancelled and the transaction off.

Upon this state of facts in connection with the other facts and circumstances appearing from the record the Court below committed no error in refusing the defendant's fifth prayer, which in substance, instructed the jury that if they find the plaintiff declined to arbitrate the matters in dispute, then the plaintiff was not entitled to recover in this action for such extra work.

The second objection that the suit was prematurely brought, we think, under the circumstances of this case, is without force. The contract, Article 9, provides that the balance was to be paid sixty days after acceptance of house, and the final payment should be made within sixty (60) days after the completion of the work included in this contract, and all payments should be due when certificates for the same are issued.

Mr. McEvoy moved and took possession of the house on the 29th of October, 1914, and the architect's final certificate is dated January 6th, 1915. On the 7th of January, 1915, Mr. McEvoy agreed that the contractor should receive out of the proceeds of a loan he was negotiating payment of the

full amount due them on the building of something over $16,000. All payments under the contract were therefore due when certificate for the same were issued, and there was a cause of action in this case at the inception of the suit.

At the conclusion of the evidence the plaintiff offered five and the defendant fifteen prayers. The Court granted the plaintiff's third and the defendant's fourth prayer and rejected all the rest. It gave four instructions of its own in place of the rejected prayers. The Reporter will set out the granted prayers and the instructions of the Court in the report of the case.

We are of opinion that the law as applicable to the facts of the case was correctly stated in the instructions granted and given by the Court and there was no error in the rulings of the Court on the prayers.

The rules of law applicable to this class of case would appear to be well settled upon undoubted authority. *A. & B. S. Line* v. *Ross,* 68 Md. 310; *Seventh Bap. Ch.* v. *Andrew et al.,* 115 Md. 535; *Baltimore* v. *Ault,* 126 Md. 402; *Iron Clad Co.* v. *Stanfield,* 112 Md. 360; *Baltimore* v. *Talbott,* 120 Md. 354.

There were twenty-four exceptions to the rulings of the Court upon evidence and it would extend this opinion beyond a reasonable length to discuss each exception. We have examined them with care and find no reversible error in the rulings thereon.

The case it appears consumed over three weeks in the Court below, and after a fair trial the jury rendered a verdict for the plaintiff for nearly two thousand dollars less than his claim, thereby allowing the defendant some of his claims and demands, and as we find no reversible error in the rulings of the Court that would justify us in disturbing the verdict the judgment will be affirmed.

*Judgment affirmed, with costs.*