GEORGE W. HAMMAKER *v.* C. FRANK SCHLEIGH.
[No. 5, October Term, 1929.]

*Decided November 21st, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Offutt, Digges, Parke, and Sloan, JJ.

*Alexander Armstrong,* with whom were *Arthur W. Machen, Jr., J. Cleveland Grice,* and *Armstrong, Machen & Allen,* on the brief, for the appellant.

*J. Lloyd Harshman* and *Leo H. Miller,* with whom was *William A. Gunter* on the brief, for the appellee.

Parke, J., delivered the opinion of the Court.

C. Frank Schleigh, a builder and contractor, agreed with George W. Hammaker to reconstruct the latter's building in Hagerstown; and, in an action at law by the builder and contractor against the owner to recover for work and labor done as a result of this contract, the plaintiff obtained a verdict of $3,275.33, but the court directed the entry of a *remittitur damna* to $2,800, and a judgment was rendered for this amount. The record presents sixteen exceptions.

The first fifteen are to the rulings on evidence. The plaintiff offered no prayer, and the case was submitted to the jury on the court's instruction, and defendant's second, third, fourth and fifth prayers. The defendant's first, sixth, seventh and eighth prayers were rejected, but the defendant's sixteenth exception was confined to the court's action in submitting its instruction to the jury. The important question on the record is the correctness of the court's instruction, which will be first considered.

The contract was made on November 17th, 1925, is under seal, and the owner is the party of the first part, and the builder and contractor is the party of the second part. Omitting the formal beginning and ending, with the signatures, and the requirement that the party of the second part will carry insurance to compensate the workmen and to indemnify the party of the first part for any action for injury or damage done to third parties as a result of the rebuilding, the contract is in this form:

"The party of the second part hereby agrees to remodel, rebuild and reconstruct the Blue Ridge Knitting Building owned by the party of the first part agreeable to the plans and specifications attached hereto and made a part hereof at and for the sum of twenty-three thousand five hundred ($23,500.00) dollars payable as the party of the second part presents to the party of the first part or his attorney, C. Walter Baker, receipts for and as the work progresses, the party of the second part agrees to complete the said building and turn same over to the party of the first part on the first day of March, A. D. 1926. That the party of the second part hereby agrees to forfeit the sum of twenty-five ($25.00) dollars per day for each and every day after the 15th day of March that said building is not completed unto the party of the first part.

"It is hereby further agreed by the party of the second part that the party of the first part may retain the sum of seven thousand five hundred ($7,500.00) dollars until said building is finally completed and accepted by the said party of the first part, same to be

retained for the purpose of paying any and all bills amounting to the sum of seven thousand and five hundred ($7,500.00) dollars left unpaid by the party of the second part. * * * And the said party of the first part agrees to pay unto the party of the second part the sum of twenty-three thousand five hundred ($23,-500.00) dollars, and at the time and upon the occasions above set forth."

The specifications attached to the contract are lengthy. At the beginning is the general provision that the entire work is to be constructed and finished according to the specifications and "to the entire approval and acceptance of the owner and his architect"; and in the subdivision which deals with the electric wiring this condition is repeated, and in the subdivision which relates to the heating system the condition is that "it shall be installed complete to the entire satisfaction of the owner and the architect."

The only other portion of the specifications that need be inserted is the following specification for protection against fire:

"Present building has sprinkler system. This shall be remodeled and continued to take care of the additional spaces. System shall be installed in accordance with the underwriter's rules."

The existing sprinkler system at the time of the contract protected four floors of the building. It consisted mainly of a number of pipes in which the water was carried throughout the building and there sprinkled when the water was automatically turned on by the melting of fuses under the heat generated by a fire. The reconstructed building was to be larger but with only three floors to protect, and the pipes in the original building were sufficient in length for the installation of the sprinkler system in the renovated and enlarged building. So, the subject matter of this part of the agreement was the subsisting system, which the contractor undertook to take down and to rearrange so as to conform to the floors and size of the reconstructed building in such a man-

ner that the system, when so remodeled, should be installed or placed in position for service in accordance with the underwriter's rules.

When not modified by other terms, a contract to install a sprinkler system would generally bind the promisor not only to set up and connect its parts but to furnish suitable and adequate material for its satisfactory operation. *Webster's Unabridged Dictionary, "Install"; Metzler v. Thye,* 163 Cal. 95, 124 Pac. 721, 722; *Long v. Ulmer Machinery Co.,* 77 Cal. App. 66; *Bernstein v. Alcorn,* 194 Iowa, 1109. But in view of the fact that the building was equipped, when the contract was made, with a particular system, and that, by explicit language, it is "this" system which "shall be remodeled and continued to take care of the additional spaces," the meaning of the specification here in controversy is, under the circumstances existing at the formation of the contract, that the contractor was to use the pipes of the subsisting system. This interpretation is supported by the fact that the cost of remodeling with the pipes of the existing system was $500, which would have been increased to $3,600 or $3,750, if new pipes were to be supplied. It is not reasonable to imply an intention of the parties that the contractor should assume so great a burden as the possibility that the pipes then in use would not be fit for their continuation in a similar use.

The exterior of the pipes gave no indication of a defective condition, and there is no evidence that the plaintiff knew of any fault at the time of the contract, nor that he believed that the pipes were not adequate for the proposed remodeling, and so he must be taken to have contracted upon the assumption that the pipes were suitable in quality for the specified purpose. It was not until the plaintiff had taken the sprinkler system down that it was discovered that the pipes had become so rusted and weakened by scale on the interior that they would not continue to withstand the necessary water pressure nor deliver the requisite volume of water. The underwriter inspected the pipes, and declined to approve the remodeled system, if these pipes were used.

As has been seen, the plaintiff was to be supplied by the

defendant with the pipe of the old system. If, therefore, the pipe, through a latent and unknown defect, could not be used as intended, the plaintiff was not in default, as he, through a subcontractor, had dismantled the old system, but could not proceed with the remodeling because he had contracted with respect to the sprinkler system upon his assumption of quality with reference to certain equipment which the defendant had, and the plaintiff was to use, but which, unknown to the plaintiff, did not possess the quality ascribed. The owner did not offer to supply new pipes, which the plaintiff was under no obligation to furnish. *Stewart v. American Bridge Co.,* 108 Md. 200, 218, 219.

The plaintiff offered testimony which tended to show either a full or substantial performance of the contract, with the exception of the remodeling of the sprinkler system. The instruction of the court charged the jury on the measure of damages recoverable upon either of these two alternative theories. Since there was no special exception to this prayer on the ground of the insufficiency of testimony to support the several findings of fact submitted to the jury, and the measure of damages is not identical, it will be necessary to state the rule upon each hypothesis.

On the first hypothesis the trial court instructed the jury that, if the plaintiff had fully performed his part of the contract except as to the installation of the sprinkler system, and if the failure of the plaintiff to install this system were due to a defect in the quality of the pipes of the original system that made it impossible for the system to be installed so as to obtain the approval of the underwriter if these pipes were used, and if this defect were unknown to both the parties at the time of the contract, then the plaintiff would be entitled to receive payment in full for the construction of the building, less such amount as the jury might find it would have cost the plaintiff to install the old sprinkler system and less twenty-five dollars per day as liquidated damages from the day the contract fixed for the completion of the building until the building was *completed or occupied* by the defendant, unless the jury should further find that the plaintiff was de-

layed in the *completion* of the building by the defendant, and, in that event, the amount should be reduced by the number of days of delay for which the defendant was so responsible.

On a finding of full performance of the contract, with the exception of the reconstruction of the sprinkler system, there was error in allowing to the plaintiff as the measure of his damages the contract price, less the expense to the plaintiff of the installation of the old sprinkler system, because the contract price was single, and, therefore, the contract price, when so reduced, embraced the profit of the plaintiff on account of that part of the work which he had not performed by reason of the discovery of the defective condition of the pipes and their rejection by the underwriter. The right to this profit does not follow merely because of an impossibility of performance resulting from a latent and material defect of which both the contracting parties were ignorant. If this were not true, the plaintiff would be entitled to his profit without the impossibility of the performance of his promise being legally chargeable to any breach of contract or of duty on the part of the defendant. Where parties enter into a contract upon the common assumption that a particular and essential state of things exists with reference to a substantial subject-matter, the nonexistence of that state of things, through default of neither party, ends the liability and prevents the accrual of a duty dependent upon it. *Anson on Contracts* (Corbin's Am. Ed.), secs. 374, 373; 3 *Williston on Contracts,* secs. 1937, 1948, 1952, 1953, 1956. If, however, the nonexistence, either of something which is a substantial subject-matter of the contract, or of some condition or particular state of things which is of the substance of the contract, is attributable to some breach of contract or of duty on the part of the defendant, and prevents the plaintiff from completing the performance of his contract, then the plaintiff is entitled to be placed in the same condition he would have been in but for the defendant's default, and, so, to recover the profit of the contract. *Supra.*

664

The vice of the part of the prayer now under discussion is that it does not make the right of the plaintiff to recover his profit for the frustrated installation of the system of fire protection depend upon some breach of duty or of contract of the defendant preventing the plaintiff, although ready and willing, from so completing the performance of the contract.

There was evidence that the owner of the building which was to be reconstructed employed an architect to prepare the plans and specifications for this renovation and enlargement. This expert specified that the sprinkler system in use should be taken apart and replaced in the remodeled building. The contractor had no choice in the matter, and it was a condition of the performance of his undertaking that he put back the original sprinkler system in the reconstructed building.

The sprinkler system was a mechanical device of a particular type, and the fact that its pipes in use had deteriorated so as to be unfit for the purpose for which they were designed and then actually serving was a latent but fundamental defect. The owner's opportunity for knowing the length of time the system had been in service, its operating condition and effectiveness, and the other factors affecting the question of its being continued in service in the remodeled system, was superior to that of the contractor. It is but reasonable to believe that the architect, in specifying that the sprinkler system should be remodeled, did so after investigation, full information, and in the exercise in this employment of the professional skill and knowledge of an expert. In the absence of any countervailing circumstances, these facts would justify the contractor's reliance, without first making an independent inquiry, upon the architect's judgment that the material specified was fit for the purpose intended. 3 *Williston on Contracts,* sec. 1966, n. 28. See *Reinhart Construction Co. v. Baltimore,* 157 Md. 420; *United States v. Spearin,* 248 U. S. 132, 63 L. Ed. 166; *Christie v. United States,* 237 U. S. 234, 59 L. Ed. 933; *Hollerbach v. United States,* 233 U. S. 165, 58 L. Ed. 898; *United States v. Utah etc. Co.,* 199 U. S. 414, 50 L. Ed. 251;

*Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108, 28 L. Ed. 86; *Bentley v. State,* 73 Wis. 416; *Faber v. City of New York,* 222 N. Y. 255; *Langley v. Rouss,* 185 N. Y. 201; *MacKnight Flintic Stone Co. v. New York,* 160 N. Y. 72; *Filbert v. Philadelphia,* 181 Pa. 530.

In the given situation, it is an implication of law that the owner warranted the fitness of the pipes for the purpose designed, and their unfitness was a breach by the owner of the implied warranty that would make it impossible for the plaintiff to complete his performance of the contract in this regard, and that would give him a right, if there were no defense available to the owner, to recover as damages any profit of which the contractor may have been deprived by reason of the owner's breach. *Balto. & O. R. Co. v. Stewart,* 79 Md. 487, 499, 500; *Bush v. Construction Co.,* 88 Md. 665, 667, 668.

Upon the theory of an implied warranty by the builder of the quality of the pipes and full performance by the plaintiff, with the exception of the completion of the sprinkler system, the measure of damages would have been the contract price diminished by the cost to the plaintiff of the installation. The contention of the defendant was that the measure of damages should be the reasonable value of the work done, provided that amount did not exceed that proportion of the contract price which the jury would find that the cost of the work actually performed bore to the cost of the whole work contemplated by the plans and specifications.

This rule has application in a limited class of cases and especially where the work and labor unperformed is of a similar nature and kind, so as to form a constituent fraction of the whole or a specific division of it, agreed to be, but not, performed. Proportion here implies a relative comparison of integral parts forming a homogeneous whole.

The authority cited in support of the enforcement of the rule shows that the principle is not invoked where the plaintiff has fully performed the whole contract except to the extent prevented by the breach of contract or of duty of the

defendant. Compare 3 *Williston on Contracts,* sec. 1977, p. 3363. Again, the contract price was entire and the installation of the sprinkler system was a distinct part of the work to be done and was different in nature and kind from the other work, and so not comparable with these other contractual obligations.

Another error in the measure of damages stated is in regard to the period for which the owner could recoup for any delay for which the plaintiff was responsible in the completion of the contract. The contract provided that the contractor should "forfeit the sum of twenty-five ($25) dollars per day for each and every day after the 15th of March that said building is not completed". The prayer, however, makes this daily forfeit extend, as liquidated damages, from the 15th of March until the building was completed or occupied by the defendant. The completion and occupancy of the building by the defendant are two different and distinct things, and on no theory of the evidence were they identical in point of time. There was, therefore, error in giving the jury the choice of two alternative but successive terminal days in computing the amount of recoupment. The confusion produced by this prayer is further increased by its having been granted in connection with defendant's fourth prayer, in which the end of the period was fixed at the time that the building was "taken over or accepted by the defendant as shown by the testimony". This introduced a third possible date, as the day of acceptance by the owner was not established by the evidence to have been necessarily coincident with either the day on which the plaintiff completed the building or the day in which it was occupied by the defendant. It is settled in this jurisdiction that the mere taking possession of the premises by the owner is not of itself an acceptance of performance according to the contract. *Pope v. King,* 108 Md. 37, 46, 47.

While the allowance of the sum of twenty-five dollars a day as liquidated damages for delay would not work any prejudice to the defendant, yet it was error, if the specified

sum is, in fact, a penalty. In the contract between the parties the contractor agreed to "forfeit the sum of twenty-five dollars" for every day the building was not completed after March 15th. The language indicates that the contracting party regarded this sum as a penalty. This allowance cannot be transmuted into agreed liquidated damages by interpretation if the provision was intended merely to secure the performance of the contract. In order for the declared forfeit to become liquidated damages by interpretation, it must clearly appear that the amount named was reasonable compensation in fact at the time when the contract was made. 2 *Williston on Contracts,* secs. 777, 779, 783, 785.

It is a question of law whether the provision is penal or only a liquidation of damages. *Supra,* sec. 784, p. 1498. In the present case, the parties have used terms which indicate the sum named was intended as a penalty to cover actual damages instead of clearly implying, as in *United Surety Co. v. Summers,* 110 Md. 95, 98, 99, 116, 120, or expressly declaring, it to be liquidated damages, as was done in the cases of *Geiger v. West. Md. R. Co.,* 41 Md. 4, 15; *Baltimore Bridge Co. v. United Rwys. etc. Co.,* 125 Md. 208, 210; *Cowan v. Meyer,* 125 Md. 450, 459; *Filston Farm v. Henderson,* 106 Md. 355, 362; *Baltimore v. Ault,* 126 Md. 402, 415. 420. In addition, the damages sustained on account of the failure to complete the building by a designated day were of a fixed and determinate character, and were such as are readily ascertainable by a jury, being the usable or rental value of a renovated building which is located on the street of a city and which is to be leased for business purposes. *United Surety Co. v. Summers,* 110 Md. 95, 111.

The building as reconstructed was leased by the owner on October 15th, 1926, at a rental yielding $375 a month, which was about one-half of the amount named in the contract.

There is no proof of what would have been the rental value of the building if the sprinkler system had been installed. In view of the tendency of the courts, especially where the agreement has been partially performed, against any interpretation of a contract which would make the provision liquidated

damages; of the use in the contract of terms not importing liquidated damages but a penalty; and of the absence of testimony which would indicate that the parties contemplated any particular injury by the delay that would not be fully compensated by the rental value, and that the stipulated amount was a genuine attempt of the parties to estimate the actual injury which would be caused, it would be unreasonable to hold that the sum stipulated in the contract under consideration is liquidated damages. *Supra; Mt. Airy Milling & Grain Co. v. Runkles,* 118 Md. 371, 376, 379; *Willson v. Baltimore,* 83 Md. 203, 212, 214.

[See *Hudson on Building Contracts* (5th Ed.) 410, and *Dodd v. Churton* (1897), 1 Q. B. 562, as to the propriety of the instruction's debtor and creditor account set up between contractor and owner for their respective responsibility for delay.]

The damages recoverable by the defendant for any delay beyond the stipulated time that was occasioned by the fault of the plaintiff would ordinarily be the amount of earnings or rentals lost to the defendant. These the defendant would be entitled to show and recoup upon the theory of a full but delayed performance.

The second and concluding part of the court's instruction is based upon the alternative finding by the jury of a substantial performance of the contract, and, if such were the finding, the jury is directed to measure the amount of recovery by deducting from the contract price the additional cost to the defendant fully to complete the building according to the contract.

In a building contract, when the plaintiff, in good faith, performs all that the contract requires, although not at the time or in the manner required, but substantially as agreed, except in respect to those things which he is prevented from performing through the breach or default of the owner, the plaintiff is entitled, when the owner has received the fruits of plaintiff's work, material, and labor, to recover, since full performance has failed in those things which are not of the essence of the contract, and since otherwise there would be a

forfeiture of the plaintiff's beneficial work, labor, and material, to the unjust enrichment of the owner. *Speed v. Bailey,* 153 Md. 655, 659, 661, 663.

While the weight of authority permits a recovery upon the contract on proof of a substantial performance, the full contract price cannot be recovered, unless the owner has accepted the work done as a complete performance. 2 *Williston on Contracts,* sec. 724. The mode of ascertaining the real benefit derived by the owner from the substantial performance of the contract, where there has been no wilful breach going to the essence of the contract, but comparatively slight omissions and defects in performance, which can be readily ascertained, measured, and compensated in damages, is ordinarily to estimate the whole work at the price fixed by the contract, and to deduct from that amount whatever sum would be required to complete the part of the work left unfinished through the default of the contractor. *Speed v. Bailey,* 153 Md. 655, 659, 661, 663; *Robinson Construction Co. v. Barry,* 135 Md. 275, 278, 280; *McEvoy v. Harn,* 129 Md. 93, 94, 95, 101; *Iron Clad Mfg. Co. v. Stanfield,* 112 Md. 360, 383, 384; *Central Trust Co. v. Arctic etc. Co.,* 77 Md. 202, 238; *Presbyterian Church v. Hoopes Artificial Stone Co.,* 66 Md. 598, 604; *Dakin & Co. v. Lee,* L. R. (1916) 1 K. B. 566; and annotations in 10 *British Ruling Cases,* 700-775; and see cases reported and annotated in 23 *A. L. R.* 1429-1442; 38 *A. L. R.* 1377-1384; 6 *R. C. L.,* secs. 343, 344, pp. 967, 972; *Williston on Contracts,* secs. 805, 842; *Sutherland on Damages* (4th Ed.), sec. 711, pp. 2678, 2679; *Woodward on Law of Quasi Contract,* sec. 175. There is nothing in the record to show that the cost of remedying the defects or omissions in performance for which the plaintiff is responsible would be so great as to work a hardship upon the plaintiff, so there is no reason why the usual rule should not be here enforced.

In *Mayne on Damages* (10th Ed.), at page 247, it is stated: "Where builders undertook to carry out certain alterations and repairs in accordance with specifications for a lump sum, it was held that defects and omissions in the work

constituted a negligent performance of the contract and not an abandonment of or failure to complete the contract, and that the builders could recover the said sum, subject to a deduction of the amount necessary to make the work correspond with that undertaken". In addition, the owner would be entitled to recoup any other damages which he had sustained through the plaintiff's failure in other respects to comply with the terms of his contract. So, if there were injury sustained by the owner through unwarranted delay in finishing the reconstruction as agreed, the defendant would be allowed a recoupment to the extent of his damages which were the certain result of the breach. *Ruff v. Rinaldo*, 55 N. Y. 664; *Lanahan v. Heaver*, 79 Md. 413, 422; *Winslow Elevator Co. v. Hoffman*, 107 Md. 621, 639, 640. And, finally, the contract price would be reduced to the extent of what would have been the cost to the plaintiff of completing the installation of the sprinkler system throughout the reconstructed building, because, obviously, the plaintiff would have no right to recover what would have been the expense to him of the completion of that part of the contract which the defendant had prevented him from performing.

It follows that the measure of the plaintiff's recovery, on the hypothesis of a finding by the jury of a substantial performance of the contract, would be the contract price, (a) less so much money as would be required to make the building, except in those particulars which the owner's default prevented the plaintiff from fulfilling, conform to the contract; and (b) less so much as it would have cost the plaintiff to perform the particular things which he had been prevented from performing by the owner's default; and (c) less, also, so much damages as may have been sustained by the owner in consequence of any failure by the plaintiff to fulfil the contract within the stipulated time. The prayer, however, allowed the defendant to recoup not only the cost to finish the work with respect to which the plaintiff was in default, but also to complete at his expense the sprinkler system, which had not been installed because of the defend-

ant's default. This was error, but not prejudicial to the defendant. On the other hand, the defendant was prejudiced by the omission from the prayer of any reference to the other two deductions.

Of the fifteen exceptions to the rulings on the evidence, only the second and third and the thirteenth and fourteenth are mentioned in the defendant's brief, and the others are submitted without argument. The exceptions submitted either relate to the extent to which the plaintiff had performed the contract, to the extra work requested by the owner and its reasonable cost, to conversation in June, 1926, between the plaintiff and the defendant in respect to demand for payments on account of the contract price, to notice given defendant that the underwriter would not approve the sprinkler system, if old pipes were used, to testimony that the cost of remodeling and installing the old sprinkler system, using the old pipes and material, would have been $500, and to the refusal to strike out plaintiff's testimony attributing delay to defendant's acts, to the refusal of the court to permit some penciled memoranda made by the architect after the contract to be given in evidence. In these rulings there was no error.

The second and third exceptions were to the admission of plaintiff's testimony that it would cost him $500 to remodel and extend the sprinkler system under the plans and specifications of the contract, and that he had employed a subcontractor to do the work for that amount. Of course, the construction of the contract was for the court and not for the witness, but it is plain that the question was to obtain from the witness what would be the cost, if he should use the material in the existing sprinkler. The testimony desired was admissible, but the form of the question should not ask the witness' opinion as to the meaning of the contract.

The evidence offered under the thirteenth and fourteenth exceptions was that of a witness who lived three blocks from the building. He was a contractor and builder, who had

672

been in the business for twenty years, and who stated that he was familiar with the construction of the building in 1926, and had himself done some work on the building in that year. He further testified that he had seen and examined the plans and specifications of the building since 1926, but when he did not state; and that he had made an examination of the building on November 10th, 1928, a few days before the trial. He was then permitted to testify as a fact that the building had been completed during the fall of 1926 in substantial compliance with the plans and specifications.

The weight to be given this testimony is one thing, but its admissibility is another. The witness was an expert, and his testimony established the requisite opportunity personally to observe the manner in which the building had been completed in 1926, and therefore it would have been competent for him to have answered the question whether, with the exception of the installation of the sprinkler system, the building had been constructed in compliance with the plans and specifications, provided a sufficient familiarity of the witness with the details of these plans and specifications had first been established. On this point his statement that he had seen or examined the plans and specifications is not enough to establish that he had a knowledge of their details which would permit him to make the comparison necessary to answer the question as to the manner of performance. Again, if this requisite preliminary foundation had been laid, his testimony should have been confined to a statement of his knowledge in what respect the reconstructed building conformed to or differed from the requirements of the plans and specifications, but he should not have been permitted to express the opinion that the work done mounted in degree to a substantial performance. *Iron Clad Mfg. Co. v. Stanfield,* 112 Md. 360, 386, 387.

In so characterizing all the work done in one general expression, the witness was not testifying to facts within

his knowledge but merely giving an opinion upon a matter not within his competency as a lay or expert witness.

Some of the errors of law worked against the plaintiff and some against the defendant, but the court cannot strike a balance, and that the errors were prejudicial to the defendant is clearly indicated by the court's reducing the jury's verdict in a substantial amount. The judgment must, therefore, be reversed in order that a new trial may be had.

*Judgment reversed, with costs, and case remanded for a new trial.*