# HARFORD SOD COMPANY, INC. *v.* RANDALL DE-VELOPMENT CORPORATION ET AL.

[No. 168, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Lester V. Jones,* with whom was *Bernard A. Greenberg* on the brief, for appellant and cross-appellee.

*Edward W. Mogowski* for appellees and cross-appellants.

FINAN, J., delivered the opinion of the Court.

The Harford Sod Co. Inc. (Harford) although favored by a judgment in the amount of $4,994.83 in a suit for breach of contract brought by it against the Randall Development Corporation (Randall) and Woodland Associates (Woodland), appellees and cross-appellants herein, appeals the refusal of the Circuit Court for Baltimore County (MacDaniel, J.) to allow the recovery of a 1% carrying charge on outstanding debts as provided for in the contract, and additionally appeals Judge Mac-Daniel's allowance of a $300.00 reduction of the claim brought against the appellees and cross-appellants for work improperly performed by Harford. In the cross-appeal, Randall and Woodlawn contend that the $300.00 reduction awarded them in the lower court was insufficient to cover their expenditures in correcting Harford's faulty workmanship.

On May 4, 1967, Harford entered into a contract with Woodland, a limited partnership whose general partner is the Randall Development Corporation, to fine grade and to furnish, lay and roll sod for certain residential lots located in the development known as "The Wildwoods" (now called "The Woodlands") in the Randalls-

town area of Baltimore County, Maryland. The sod was guaranteed to be "in a living state at the time of installation," and Harford agreed to water it upon installation, when necessary. Additionally, the contract provided that all work was to be acceptable to Woodland's job superintendent at the time of completion, that payment was to be made on or before 30 days after billing and that a 1% carrying charge was to be added monthly on any unpaid balance.

Harford made three separate, original billings to Woodland under the May contract. The first invoice dated June 27, 1967, was in the amount of $1,157.00 and represented the sum due for work performed by Harford on 4 lots. Woodland found the work done under the first invoice to be satisfactory and made prompt payment. However, the second invoice also dated June 27, 1967, and the third invoice dated July 14, 1967, remain unpaid, as Woodland contends that the work performed under these billings was faulty. The second invoice covering the fine grading and sodding of 12 lots was in the amount of $4,463.28, and the third billing for work on four lots was in the amount of $1,331.55.

On August 23, 1967, Woodland notified Harford by letter that many home owners in the development had complained bitterly about the poor quality of the sod installed by Harford and requested that Harford reinstall sod of a good quality on 8 lots. Harford responded to this letter on September 1, 1967, by stating that the contract between the parties provided that all work was to be acceptable to the job superintendent *at the time of completion,* "not two months later," and by notifying Woodland that the 1% carrying charge per month was to be added to the unpaid invoices. The parties being unable to settle this matter, Harford filed suit in the Circuit Court for Baltimore County against the Randall Development Corporation and the limited partnership, Woodland Associates. The defendants answered the claim with a general issue plea. After hearing all

of the evidence presented, the lower court in an oral opinion stated:

> "The question involved is whether or not it was livable sod at the time it was placed down. There has been testimony from people representing the plaintiffs who claim it was in fact livable sod at that particular time. However, there has been testimony of quite a few witnesses on behalf of the Defendant, not the Defendant himself, their only witness stated as far as he was concerned * * * it looked green to him at the time they put it down. * * *
>
> "So when I add up all of the evidence in this case it appears to me, number one, that Harford has done basically what it contracted to do in reference to the supplying of the sod. It appears to me that a minimum amount of work on their part was improperly done. * * *
>
> "* * * In addition, it is my opinion that there has been enough testimony and enough evidence that a minor part of this was not done properly and that something should be deducted from the total amount, and I am deducting a figure that I feel would be fair under the circumstances of $300. * * *"

A judgment for the total amount of the second and third invoices, minus a $300.00 deduction for faulty workmanship and minus an additional deduction of $500.00 which latter deduction is not in dispute on appeal, was awarded to Harford against both Randall and Woodland. With regard to the question of whether Harford was entitled to the 1% carrying charge on outstanding debts as provided for in their contract, the lower court thought that:

> "* * * [T]he intent of the interest was that in the event Harford Sod was not paid and there was no reason why they shouldn't be paid,

that they had a right to demand something in addition to the regular payment * * *. That is not the case here.

"In addition to that, there is other evidence in the case. A letter was sent indicating what they intended to do after February of 1969, bills were sent not including things of that sort, and it leads the Court to believe the Harford Sod Company in the beginning did not intend to hold them to this and did not intend it to be that strong a part of the entire agreement * * *. [i.e. the 1% carrying charge.]"

Harford first challenges the lower court's allowance of the $300.00 deduction from their claim against Randall and Woodland, contending that the reduction amounts to a counterclaim or set-off and as such must be specially pleaded in accordance with Maryland Rule 314 d. The distinction between a counterclaim or set-off and a recoupment was fully and clearly discussed by Chief Judge Brune, writing for the Court in *District Agency Co. v. Suburban,* 224 Md. 364, 369-370, 167 A. 2d 874 (1961). Referring to the opinion in *District Agency,* Judge Sybert in *Eisenberg, Admin. v. Air Cond., Inc.,* 225 Md. 324, 337, 170 A. 2d 743 (1961) stated:

"* * *The essential conclusion drawn is that a claim growing out of an independent transaction (set-off) must be specially pleaded, while a claim arising out of the same transaction (recoupment) need not be, but may be proved under a general issue plea, unless an affirmative judgment is sought by the defendant. * * *" 225 Md. at 337.

See also 2 Poe, *Pleading and Practice,* 6th ed., §615; and *Molesworth v. Schmidt,* 196 Md. 15, 21, 75 A. 2d 100 (1950). In the instant situation, the $300.00 reduction awarded by the lower court, being a recovery for faulty performance under the contract sued upon by

the plaintiff below, clearly arises out of the same transaction and therefore as a recoupment may be proved under a general issue plea.

Judge MacDaniel, while allowing the $300.00 recoupment against Harford's claim, refused to allow another claim by the appellees and cross-appellants for $152.00 saying, "* * * I am not making any award on that. That $152.00, in my opinion, * * * should have been done with a separate pleading. * * *." Randall and Woodland contend, and we agree, that the $152.00 should also have been provable under the general issue plea as a recoupment. A review of the record reveals that this claim was in actuality an expenditure by Woodland to another landscaping company incurred in the process of correcting work which had been improperly performed by Harford. We are not able to perceive any reason for the requirement of a special pleading in this situation and not for the $300.00 recoupment.

Harford's second reason for appealing is the refusal of Judge MacDaniel to allow the carrying charge on the invoices which remain unpaid by the appellees and cross-appellants, when the contract between the parties explicitly provides that such will be charged. The lower court found that it was the intention of the contracting parties that the carrying charge was not to be enforced, and we are bound by that finding of fact, unless it is clearly erroneous. Maryland Rule 886. Although Mr. Winton B. Osborne, a representative of Harford, testified at the trial that he had always intended to charge the carrying fee, there was admitted into evidence, without objection, a letter dated February 20, 1969, almost 2 years after the date on which the contract in question was executed which notified Harford's customers that due to the increased costs of doing business, the "Board of Directors has found it necessary *to enforce the policy* adopted as of January 1, 1960, of adding a 1% monthly carrying charge as stated on the bottom of our bills." (Emphasis supplied.) The letter additionally admitted

that, "In the past we have not rigidly enforced this carrying charge, but effective March 15, 1969, all past due accounts will have the 1% carrying charge added per month on any unpaid balance. * * *" Randall and Woodland were also allowed, without objection, to show that the billings they had received on past due accounts did not contain the carrying charge and to elicit testimony to the effect that Mr. Osborne had stated at the time the contract was signed with reference to the carrying charge that, "We put this in our contracts but we just make nothing of it." (As to the propriety of considering parol evidence admitted without objection by counsel, see, *Baldi Construction Engineering, Inc. v. Wheel Awhile, Inc.,* 263 Md. 670, 284 A. 2d 248 (1971) ; and cases cited therein.) In view of the evidence before Judge MacDaniel, we cannot agree with Harford that he was clearly in error in construing the intent of the contracting parties as he did.

Randall and Woodland in their cross-appeal contend that the testimony of the home owners proffered in the trial court established the fact that the sod installed by Harford was faulty and improperly placed. The home owners testified to a total expenditure of $686.50 on their part in efforts to correct what they alleged to be poor sod conditions, and the appellees and cross-appellants argue that the court below erred in not reducing Harford's award by this amount. Judge MacDaniel viewed the testimony of the home owners, and we feel correctly so, in the following manner:

> "These individual people testified as to the manner it [the sod] was put down. That is not expert testimony and I pay very little attention to it. They are not people experienced in this field. We have people experienced in the field, like the representative of the Defendant, and he never made any complaint about the way it was put down." [1]

---

1. Additionally, we cannot follow the reasoning which would

The representative of Randall and Woodland referred to by Judge MacDaniel, Mr. Jacob W. Jacobs, was the job superintendent on the development site, and he admitted on cross-examination that the sod installed by Harford was green, not brown as some of the home owners had testified. The only guarantee which Harford made concerning the condition of the sod was that it was to be living at the time of installation, and the testimony of the appellees and cross-appellants' own job superintendent confirms that it was in a living state at that time. The record further reveals that the sod ordered under the contract in dispute was a cheaper grade of sod than that ordered by Woodland for the model homes portion of their development, which fact led the lower court to feel that Woodland was "* * * not inclined to have perfect sod put around these * * * particular homes. * * *" Again, in view of all of the evidence presented before the lower court, we cannot conclude that it was clearly in error in its holding that Harford had "done basically what it contracted to do."

> *Judgment reduced by $152.00 and affirmed as modified; appellant (Harford Sod Company) to pay costs.*

permit Randall and Woodland to claim the benefit, by way of a recoupment or counterclaim, of the amount of the expenditures made by the individual property owners to correct the faulty sod conditions, unless they could show that they had a legal obligation to reimburse the home owners and had done so.