493 A.2d 410

**FIRST NATIONAL BANK OF MARYLAND, et al.**

v.

**Manuel SHPRITZ.**

**No. 1455, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 11, 1985.

624

626

628

E. Fremont Magee, Baltimore (Stephen J. Immelt and Piper & Marbury, Baltimore, on brief), for appellants.

Samuel Intrater, Washington, D.C. (Neil Intrater, Washington, D.C., on brief), for appellee.

Argued before GILBERT, C.J., and MOYLAN and BISHOP, JJ.

BISHOP, Judge.

Appellee, cross-appellant, Manuel Shpritz, (hereinafter "Shpritz") sued appellants and cross-appellees, First National Bank of Maryland and Gilbert South, individually and in

their capacities as personal representatives of the Estate of Billy F. Rankin, (hereinafter "the Personal Representatives" or "appellants") in the Circuit Court for Montgomery County. The suit alleged breach of fiduciary duty, fraud and conversion and sought compensatory and punitive damages. From summary judgments entered in favor of Shpritz against the personal representatives both in their representative capacities and individually, for damages in the amount of $230,730.62, the personal representatives appeal and Shpritz cross-appeals the entry of summary judgment in favor of the personal representatives on his claim for punitive damages.

## FACTS

In 1960, Billy F. Rankin, a pharmacist, and Manuel Shpritz, an optometrist, collaborated in the development of "Clens," "Soa-Clens" and "Soothe", chemical solutions associated with the care of hard contact lenses. In 1961, and again in 1968, Shpritz, Rankin and Burton Parsons Chemical, Co., Inc. entered into a contract whereby the company would market and sell the products and pay a percentage of sales receipts in royalties to Rankin, who, in turn would pay a percentage of his royalties to Shpritz.[1] Specifically, the contract provided:

1. The Company shall pay to Rankin a royalty equivalent to 5% of net sales of a contact lens cleansing agent known as "Clens", ... [sold] in the United States ... [and] a royalty equivalent to 2% of net sales of Clens ... sold in foreign countries.

2. The Company shall pay to Rankin a royalty equivalent to 4% of the net sales of a contact lens soaking and wetting agent known as "Soa-Clens" ... [sold] in the

---

**1.** Shpritz also had a separate contract with Burton Parsons for additional royalties, which was terminated in 1980 when an affiliate of Burton Parsons purchased Shpritz's intellectual property rights in the contact lens products.

United States ... [and] a royalty equivalent to 2% of net sales of Soa-Clens ... sold in foreign countries.

3. The Company shall pay to Rankin a royalty equivalent to 2% of net sales of an eye lotion known as "Soothe" .... [sold] in the United States, Canada and foreign countries....

4. Rankin shall pay to Shpritz 40% of all amounts payable to him by way of royalties on Clens, 40% of all amounts payable to him by way of royalties on Soa-Clens and 25% of all amounts payable to him by way of royalties on Soothe. To facilitate such payment the Company is authorized to deduct the amounts due Shpritz from the amounts otherwise payable to Rankin and to make payments direct to Shpritz as herein provided.

Shpritz's assertion in his affidavit that throughout the performance of the contract, Burton Parsons paid Shpritz directly went uncontradicted; however, it is also undisputed that only Rankin, and not Burton Parsons, had a contractual obligation to pay Shpritz.[1a]

On January 7, 1981, the day before his death, Rankin filed suit against Burton Parsons,[2] alleging their breach of several separate royalty contracts covering products other than Clens, Soa-Clens and Soothe.

On February 10, 1981, appellants were appointed personal representatives of Rankin's estate. In accordance with Md. Est. & Trust Code Ann. § 7–103 (1974), appellants published notice that "[a]ll persons having claims against the decedent must present their claims to the [personal representatives] or file them with the Register of Wills on or before six months from the date of appointment.... Any claim not filed on or before that date ... is unenforceable thereafter."

---

**1a.** No issue was raised as to whether Shpritz would have had a cause of action against Burton Parsons under the contract; however, the parties proceeded as if he had.

**2.** Burton Parsons merged with Alcon Laboratories, Inc., in December of 1981.

The personal representatives continued Rankin's suit against Burton Parsons. In late 1981, Shpritz learned of the lawsuit for the first time. In February 1982, in what would be the first of three meetings, Shpritz met with the attorneys for the estate.[3] The attorneys informed Shpritz that during pre-trial discovery they learned that Burton Parsons made unauthorized deductions from gross sales receipts and had therefore failed to make proper royalty payments, not only under Rankin's separate contracts, but also under the contracts covering Clens, Soa-Clens and Soothe, in which Shpritz had an interest. The attorneys requested that Shpritz testify with regard to the Clens, Soa-Clens and Soothe contracts and informed him that, after the trial was over, the information that they had against Burton Parsons would be turned over to Shpritz so that he could bring a separate suit against the Company.

The attorneys made it clear that they were representing the estate only and that if Shpritz wished to recover any unpaid royalties owed to him, he would have to file suit himself. Shpritz agreed to testify and did not file suit against Burton Parsons. Shpritz's counsel attended each day of trial.

On November 9, 1982, contrary to Shpritz's expectations, in its final argument to the jury the estate requested and obtained a judgment in the amount of $750,000 [4] which included the full amount of unpaid royalties on Clens, Soa-Clens and Soothe due to Rankin, including those to which Shpritz would have been entitled. Appellants stipulated below that "the evidence introduced by the estate [in the suit against Burton Parsons] showed unpaid royalties on Clens, Soa-Clens and Soothe [in the] amount of $570,698 ... [and] that the royalties set forth in the above included

---

**3.** Appellants were represented by different counsel during their litigation against Burton Parsons.

**4.** We affirmed the judgment in *First National Bank of Maryland v. Burton, Parsons & Co., Inc.*, 57 Md.App. 437, 470 A.2d 822 (1984). The Court of Appeals denied certiorari. 300 Md. 88, 475 A.2d 1200 (1984).

the total royalties payable by [the Company] under the contract of ... 1968."

On December 27, 1982, Shpritz filed a claim with the estate for $230,000, an amount reflecting forty percent of the $570,695 portion of the judgment, plus interest. The personal representatives rejected the claim on the ground that it was not filed within six months of the date of their appointment and was barred under Estates and Trusts § 8–103(a). In accordance with Estates and Trusts § 8–107(b) the personal representatives notified Shpritz that his claim would be "forever barred ... unless he file[d] a petition for allowance *or commence[d] an action against the personal representative ... within 60 days* after the mailing of notice of [disallowance]...." (Emphasis added). On February 3, 1983, Shpritz brought the present suit against the personal representatives who persisted in their argument that the claim was barred as a matter of law. The trial court found otherwise and entered summary judgment in favor of Shpritz.

In their appeal the personal representatives do not dispute the merits of Shpritz's claim of entitlement to the $230,000. Instead, they raise the following questions:

I. Did the court err in concluding that Shpritz's claim was not barred under Est. & Trusts § 8–103(a)?

II. Were the personal representatives entitled to a set off in an amount equal to Shpritz's proportionate share of the legal fees and costs incurred in the suit against Burton Parsons?

III. Was it error to enter judgment against the personal representatives as individuals?

## I.

We agree with the circuit court's conclusion that Shpritz's claim was not barred as a matter of law.

Est. & Trust § 8–103(a), upon which appellants rely, provides:

all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within six months after the first appointment of a personal representative.

Appellants contend that Shpritz's claim for royalties was "contingent upon receipt by Rankin's estate of additional royalties under the 1968 agreement." They argue that it is immaterial that Shpritz was in fact unaware he was entitled to additional royalties. Since he failed to file a "contingent" claim[5] with the estate by August 10, 1981, six months after appellants were appointed, his claim is forever barred.

■ Shpritz contended below, maintains on appeal, and we agree that his claim is governed not by § 8–103(a) but by § 8–103(c), which states:

(c) *Conduct of Personal Representative.*—A claim against the estate based on the conduct of or a contract with a personal representative is barred unless an action is commenced against the estate within six months of the date the claim arose.[6]

■ Section 8–103(a) corrects the injustices caused by the common law rule of abatement of actions by death while preserving the executor's interest in the prompt settlement of the decedent's estate. *See generally, Burket v. Aldridge,* 241 Md. 423, 427–29, 216 A.2d 910 (1966); *Bertonazzi v. Hillman,* 241 Md. 361, 366–67, 216 A.2d 723 (1966).

---

5. See §§ 8–104(b), 8–112.

6. Neither party denies, nor do we hesitate to conclude that Shpritz's suit, while naming the personal representatives, was brought to enforce the disallowed claim against the estate, § 8–107(b), and therefore constituted a "claim against the estate" within the meaning of § 8–103(c). See also, § 8–107(d) which provides that a judgment against a personal representative in a suit such as Shpritz's "is an allowance of the claim" against the estate.

■ Section 8–103(c) addresses claims against an estate which arise out of the conduct of a personal representative, e.g. *Bastian v. Laffin,* 54 Md.App. 703, 460 A.2d 623 (1983) (Personal Representative's negligent failure to turn personalty of decedent over to heirs), as opposed to conduct of the decedent during his lifetime. E.g., *Yingling v. Smith,* 259 Md. 260, 269 A.2d 612 (1970) (Breach of contract to make reciprocal wills); *Burket; Bertonazzi; Cornett v. Sandbower,* 235 Md. 339, 201 A.2d 678 (1964) (Automobile accident causing personal injury); *Campbell v. Welsh,* 54 Md. App. 614, 460 A.2d 76, *cert. denied,* 297 Md. 338 (1983) (Breach of oral contract to convey land by will). Accordingly, § 8–103(c)

> provides a statute of limitations for *claims that arise after death.* The Commission felt that in order to insure the prompt administration and settlement of estates, a six month statute of limitations would be reasonable.

Comment to § 8–103 (formerly Art. 93 § 8–103) (Emphasis added).

■ Thus, whatever the meaning of "contingent" claim, as that term is used in § 8–103(a), it clearly does not encompass a claim arising after death which, although seeking assets held by an estate, is founded upon the wrongful acts of the personal representatives.[7] A contrary interpretation would render § 8–103(c) meaningless, and we will not presume that, in enacting subsection (c), the legislature intended to create an ineffective or invalid law. *Swarthmore Co. v. Kaestner,* 258 Md. 517, 527, 266 A.2d 341 (1970). Shpritz's claim against the estate was unrelated to any conduct of Billy Rankin but rather arose out of the personal representatives' tortious acquisition and retention of Shpritz's royalties and, therefore, was not barred by § 8–103(a).

---

7. The parties do not cite, nor do we uncover, any Maryland case defining "contingent claim." Because we hold this case to be governed by subsection (c) of § 8–103, we do not decide the meaning of that term.

 The issue remains whether Shpritz's claim was timely filed under § 8–103(c). While under § 8–103(a), an action against an estate is deemed to "accrue" upon the date of the appointment of a personal representative, the six month period of limitations under § 8–103(c) begins to run from "the date the claim arose." Although it is not totally clear from the record, relying on *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677 (1981), the circuit court determined that Shpritz's claim arose on November 9, 1982, when he reasonably should have discovered, and in fact did discover, that contrary to the representations of their agents, the personal representatives were in ·fact seeking the full amount of unpaid royalties under the 1968 contract, including Shpritz's forty percent share.[8] We find no error in this ruling.[9] Shpritz filed his declaration against appellants on February 2, 1983, less than three months after November 9, 1982, and therefore well within the six

---

8. Because the judge's opinion is unclear, we have necessarily gleaned his determination from the following statements and findings of the court:

> Poffenberger indicate[s] that the date from which we would compute the six month period would be the date on which reasonably the Plaintiff in this case became aware that he had a claim.... [P]romptly upon learning he did have a claim against the personal representatives, [Shpritz] did file that claim ... 12/27/82 was the date on which the claim against the estate was filed ... which is one month after the date on which he learned of ... judgment.... I do not believe that there is any proscription against the filing of [Shpritz's] claim based upon ... the date that he learned of the entry of the judgment.

There was no dispute below that Shpritz learned of the judgment on November 9, 1982 and that judgment was entered on the same day.

9. In *Poffenberger* the Court of Appeals held the "discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." The discovery rule is inapplicable to all actions unless the statute, such as § 8–103(a), prescribes a different rule for accrual of actions. See also, *Mills v. International Harvester*, 554 F.Supp. 611 (D.Md.1982) (Discovery rule inapplicable in action for breach of warranty under Md.Com.Law Code Ann. § 2–725 (1975 Repl.Vol.)). Compare § 8–103(c).

month period mandated by § 8–103(c). The trial court correctly concluded that the complaint was timely.

■ Appellants maintain that the court erred by interpreting the *Poffenberger* decision to override the expressly limiting language of § 8–103(a). As we stated previously, the *Poffenberger* discovery rule would be applicable to § 8–103(c) but not to § 8–103(a). *See* note 7, *supra.* Whether the judge applied *Poffenberger* to § 8–103(a) or § 8–103(c) is unclear. To the extent that the reasoning underlying his correct conclusion was erroneous,

> [w]e [may] nevertheless affirm as it is well established that if a decision of the lower court is correct for a correct reason properly before us, but not for the reason on which the lower court based its decision, [the] Court will affirm the decision of the lower court.

*Aubinoe v. Lewis,* 250 Md. 645, 649, 244 A.2d 879 (1968). *See also Diener Enterprises, Inc. v. Miller,* 35 Md.App. 410, 412 n. 2, 371 A.2d 439, *cert. denied,* 280 Md. 729 (1977).

## II.

### *Attorneys' Fees*

■ Appellants next contend that they are entitled to a set-off against Shpritz's judgment in an amount equal to his proportionate share of the attorneys' fees and costs associated with the estate's litigation against Burton Parsons.[10] The circuit court denied the request on the ground that appellants failed to produce sufficient evidence in support of the asserted fees and costs. We affirm the court's denial

---

**10.** Although they offered no specific documentary support below, appellants claim they incurred attorneys' fees equaling 25% of the $750,000 judgment, plus additional costs, for a total of $272,000. They also claim that $96,000 in fees and costs were incurred in connection with the appeal.

although on a different ground than that relied on below.[11] *Aubinoe,* 250 Md. at 649, 244 A.2d 879.

Although appellants characterize their claim as one for set-off, their effort to reduce Shpritz's judgment is more accurately described as a claim for recoupment. A claim for "set-off" seeks an affirmative judgment for damages, often in excess of those claimed by the plaintiff and is based on a transaction independent of that upon which the plaintiff's claim is based. *See e.g. Holloway v. Chrysler Credit Corp.,* 251 Md. 65, 66–69, 246 A.2d 265 (1968) (Defendant's claim under separate oral contracts with Plaintiff); *Molesworth v. Schmidt,* 196 Md. 15, 19, 75 A.2d 100 (1950). *See generally* 2 Poe *Pleading & Practice,* § 615 (6th ed. 1970). Set-off must be pleaded specially by way of counterclaim. *E.J. Smith Constr. Co. v. Burton,* 262 Md. 62, 67–70, 277 A.2d 84 (1971). Rule 2–331.

Where, as here, the defendant seeks compensation from the plaintiff for damages resulting from the same transaction upon which the plaintiff's claim is based, his claim is one for recoupment and may be proved under a general issue plea. *See e.g. Harford Sod Co. v. Randall Development Corp.,* 264 Md. 214, 218–19, 285 A.2d 656

---

**11.** In finding appellants' evidence insufficient, the court relied on cases decided under Estates & Trusts § 7–602. That section provides in pertinent part:

(a) *General.* An attorney is entitled to reasonable compensation *for legal services rendered by him to the estate* and/or the personal representative.

(b) *Petition.—Upon the filing of a petition in reasonable detail* by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney.

The standards set out in Section 7–602, insofar as they regulate compensation for an attorney providing legal services to an estate, are inapplicable to appellants' claim for fees and expenses to be charged against Shpritz's recovery. The judge erred in applying those standards.

(1972); *Eisenberg, Admin. v. Air Cond., Inc.,* 225 Md. 324, 337–8, 170 A.2d 743 (1961).

■ Whether termed set-off or recoupment, appellants' claim must fail. First, appellants' attorneys were authorized to represent only the estate and, theoretically, the estate was obliged to pay its attorneys only for those fees and costs associated with the recovery *due to the estate.*

Apparently recognizing that there was no contract between appellants and Shpritz to share the cost of legal fees, appellants base their claim for reimbursement upon a theory of unjust enrichment. They argue that Shpritz should not be able to share in the judgment without sharing in the fees and other costs which produced the judgment. After all, as appellants put it, "[t]he additional royalties ... did not fall from the sky." Indeed, Shpritz's royalties did not "fall from the sky." The court, by granting a general judgment to appellee based on a declaration that alleged fraudulent procurement, conversion and violation of a fiduciary duty, found at least implicitly that appellants procured and retained the additional royalties as alleged in that declaration. The court found "that the total intention of the personal representatives in this case were (sic) to deflect the payment of lawfully due monies from Dr. Shpritz to their own estate, that is the estate to which they were charged" and that "they did this without just cause." The court also implicitly found fraud when it determined that Shpritz's claim arose on November 9, 1982, the day he learned that the judgment in favor of the estate included his royalties due from Burton Parsons, *see* discussion at p. 636 and footnote 8, *supra.* Significantly, the court also granted prejudgment interest from that date, thereby acknowledging that Shpritz was unlawfully deprived of his money as of November 9, 1982, the date of the judgment and the date on which the estate obtained the right to the money. That action was the fraudulent procurement. The conversion was not complete until appellants subsequently refused to pay over the royalties.

Although the court granted a general judgment of liability without explicitly setting out any particular legal theory, it is apparent from the record that the court believed Shpritz had proved his allegations.

■ In any event, as a general rule, in the absence of evidence to the contrary, a general judgment for one party implies a finding in that party's favor on all issues raised by the pleadings. *See* 49 C.J.S. *Judgments* § 441, pp. 872–73 (1974); *State Ex. Rel. State Highway Com'n v. Wiggins,* 454 S.W.2d 899, 901–2 (Mo.1970). *See also, Victory Sparkler Co. v. Francks,* 147 Md. 368, 372, 128 A. 635 (1925) (absent evidence to the contrary, court must assume that trial court proceeded in harmony with the pleadings and that the proof conformed to them).

■ Considering the foregoing, we cannot conclude that appellants have presented an equitable claim in *quantum meruit* for attorneys' fees. *See e.g., Stein v. Simpson,* 37 Cal.2d 79, 230 P.2d 816, 821 (1951). ("Plaintiff is not unjustly enriched when the cause of the benefit conferred was the wrongful conduct of defendant."). Compare *Everhart v. Miles,* 47 Md.App. 131, 422 A.2d 28 (1980).

■ The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution. *Restatement, Restitution,* § 1, comment c. (1937). For example, "[a] person who officiously confers a benefit upon another is not entitled to restitution therefor." *Restatement, Restitution,* § 2. Similarly, except under circumstances not here applicable, "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution...." *Restatement, supra,* § 112. It is therefore clear that, while "a person is enriched if he has received a benefit," the law does not consider him *unjustly enriched* unless "the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust." *Hamilton v. Board of Education,* 233 Md. 196, 201, 195 A.2d 710

(1963) (Emphasis added in part). There are no such circumstances in the case *sub judice.*

## III.

### Individual Liability

The court erred in entering judgment against appellants as individuals.

Est. & Trusts § 8–109 provides in pertinent part:

(a) *Individually.*—The individual liability of a personal representative to third parties arising from the administration of the estate is that of an agent for a disclosed principal, as distinguished from his fiduciary accountability to the estate.

. . . . .

(c) *Obligations and torts.* A personal representative is not individually liable for obligations arising from possession or control of property of the estate or for torts committed in the course of administration of the estate unless he is personally at fault.

(d) *Effect of allowance.*—When the court allows a claim against the personal representative individually, the allowance has the same effect as a judgment against him.

Although the record is unclear, in entering judgment against the personal representatives individually the judge was apparently concerned that a judgment against the estate would lend credence to appellants' § 8–103(a) limitations argument.

The court stated:

My reluctance to grant the judgment against the estate lies in the fact that it may fuel the fire that this is solely an estate claim, [governed by § 8–103(a)] and I believe the theories that have been interposed by the Plaintiff....

The court then entered an additional judgment against appellants as individuals as an alternative to estate liability. He concluded:

> If the [appellate] Court finds that there was ... estate liability, in the infinite wisdom of that Court, *it can allow the claim solely against the estate,* assuming it accepts my rationale that the estate trust article does not bar that.

(Emphasis added).

█ The judge may have overlooked the fact that, given the posture of the case before him, a judgment against the personal representatives, *qua* personal representatives, effectively made the estate liable for Shpritz's originally disallowed claim, as though judgment had in fact been entered against the estate. § 8–107(d), *supra.*

█ It appears the court's ruling that appellants were individually liable was not based upon an express finding of fact or law with regard to appellants' "personal fault," § 8–109(c), but rather was akin to a conditional judgment, in the event that appellants limitations argument prevailed on appeal. We affirm the court's judgment that § 8–103(a) was not a bar to appellee's claim and we vacate the judgment against appellants as individuals.

### Shpritz's Cross-Appeal

Shpritz argues that, in determining that the undisputed facts failed to present a triable issue on punitive damages, the court applied an erroneous legal standard.

█ Punitive damages are recoverable in tort actions upon a showing of malice. "The type or degree of malice required depends upon the nature of the tort.... Where the tort arises out of a contractual relationship, actual, rather than implied, malice is required *[H.R. Block, Inc. v.] Testerman* ... 275 Md. [36] at 44 [338 A.2d 48] [1975]. *See also Aeropesca Limited v. Butler Aviation International, Inc.,* 44 Md.App. 610 [411 A.2d 1055] (1980)." *American Laundry Mach. v. Horan,* 45 Md.App. 97, 111–12, 412 A.2d 407 (1980). Actual or express malice " 'has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced

by hate, the purpose be to deliberately and willfully injure the plaintiff.' *Testerman,* [275 Md.] at p. 43 [338 A.2d 48], *Drug Fair v. Smith,* 263 Md. 341 [283 A.2d 392] (1971)" Id. at 111, 412 A.2d 407 (footnote omitted).

██ Punitive damages may be recovered in other types of tort actions upon a showing of the legal equivalent of malice, which has been defined as "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others." *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 532, 366 A.2d 7 (1976); *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 239, 278 A.2d 12 (1971). *See generally Medina v. Meilhammer,* 62 Md.App. 239, 248–50, 489 A.2d 35 (1985) (implied malice in personal injury actions).

Since the circuit court applied the actual malice standard to Shpritz's tort claims, the issue is whether the torts for which appellants were held liable arose out of a contract.

In *General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977), the appellant contended that the torts of assault and false imprisonment committed against appellee, their employee, arose out of their employment contract and, therefore, required a showing of actual malice as a prerequisite to recovering punitive damages. After an extensive review of the relevant cases, the court rejected appellant's contention observing that "[i]n each instance, the tortious conduct and the contract were so intertwined that one could not be viewed in isolation from the other. In one form or another the tort arose directly from the performance or breach of the contract." 281 Md. at 637, 381 A.2d 16. *See e.g., Henderson v. Maryland National Bank,* 278 Md. 514, 366 A.2d 1 (1976) (trespass arising from wrongful repossession of automobile by lienholder); *Foodfair Stores v. Hevey,* 275 Md. 50, 338 A.2d 43 (1975) (conversion of money due under contract between parties); *Miller Building Supply, Inc. v. Rosen,* 61 Md.App. 187, 485 A.2d 1023 (1985)

(Fraudulent performance of employment contract).[12] *Compare, Wedeman v. City Chevrolet Co.*, 278 Md. 524, 366 A.2d 7 (1976) (Fraudulent inducement to contract).

We have no trouble concluding that Shpritz's tort claims based upon appellants' wrongful retention of his money were directly related to, and arose from, appellants' breach of the 1968 contract. *Foodfair Stores v. Hevey.* The judge did not err in applying the actual malice standard to these claims.

Shpritz's claim for fraud was based upon the misrepresentations of appellants' agents regarding the intended result of the litigation under the 1968 contract. Whether the fraudulent acquisition of Shpritz's funds constituted a tort arising out of the contract presents a closer question. While clearly, the attorneys had a duty, independent of the contract, not to deceive Shpritz by obtaining a judgment for his share of the royalties, contrary to their previous representations, Shpritz would have suffered no damage had appellants promptly paid the money over in accordance with their contractual duty. Since Shpritz could not have sustained his action for fraud without proof of damage, *Wedeman*, 278 Md. at 532, n. 5, 366 A.2d 7, and since the damage proved was inextricably intertwined with the breach of contract, we believe the fraud cannot be viewed in isolation from that breach. *Piskor*, 281 Md. at 637, 381 A.2d 16. There having been a direct nexus between the tort and the contract, we conclude that the judge correctly applied the actual malice standard to Shpritz's claim for fraud. We also agree with the judge that the undisputed facts fell short of the minimal showing required under that standard, and therefore judgment was proper.

---

12. The Court in *Miller*, while faithful to precedent, criticizes the rule distinguishing between pure torts and torts arising out of contract. 61 Md.App. at 196, n. 2, 485 A.2d 1023. Significantly, the Court of Appeals granted certiorari on May 14, 1985.

## Conclusion

Shpritz's claim was not barred by Est. & Trusts § 8–103(a) but was timely filed under § 8–103(c). We, therefore, affirm the judgments against appellants as personal representatives of the Estate of Billy F. Rankin, with no recoupment for attorneys' fees; however, we vacate the circuit court's judgment against appellants as individuals. Since Shpritz failed to present sufficient evidence of actual malice, we also affirm the court's judgment denying Shpritz's claim for punitive damages.

JUDGMENTS AS TO INDIVIDUAL LIABILITY OF THE PERSONAL REPRESENTATIVES VACATED; ALL OTHER JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.