558 A.2d 798

**Kathleen SMITH**

v.

**Frederick D. SMITH.**

No. 1444, Sept. Term, 1988.

Court of Special Appeals of Maryland.

June 9, 1989.

Mary Beth McNamara (Joel Marc Abramson, and Talkin and Abramson, on the brief), Columbia, for appellant.

Mark S. Dachille (Sheila K. Sachs and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

BISHOP, Judge.

This appeal and cross-appeal arise out of: a "Motion to Determine Arrearages", filed by appellant, Kathleen Smith ("Kathleen"), on unallocated alimony and child support payment which she was to receive under a property settlement agreement; and a "Counter–Motion to Determine Arrearages", filed by appellee, Frederick D. Smith, ("Frederick"), to determine his entitlement to certain credits allegedly due for direct costs incurred by him for the support of the parties' minor children. After taking testimony and receiving other evidence on the issues, the Circuit Court for Anne Arundel County (Thieme, J.) issued an order which determined that, although a judgment of approximately $27,365 in arrearages was due Kathleen, no money would be awarded because Frederick was entitled to credits, by way of recoupment, in the amount of approximately $28,000, and the arrearages and the credits cancelled each other. Kathleen appealed that order, and Frederick filed a cross appeal.

The issues before this Court are:

I. Whether the circuit court judge erred in calculating the amount of the arrearages due Kathleen at $27,365.

II. Whether the non-modification clause in the parties' support agreement precluded the trial judge from granting Frederick any credit for the payments made by him in support of the children.

III. Whether, assuming that the court ordered recoupment does not violate the parties' express agreement against modifications, Frederick is otherwise entitled to a credit for direct payments, made in support of the minor children, against the arrearages due under the agreement.

IV. Whether, assuming that Frederick was entitled to a credit against the amount of arrearages, the circuit court judge erred in determining that Frederick was entitled to a credit of $28,000.

## FACTS

For purposes of this opinion we adopt the circuit court judge's findings of fact:

Frederick ... and ... Kathleen ... were married on May 14, 1966. Two children, Lisa and Frederick, Jr., were born to their union. The parties first separated on December 22, 1982. Shortly thereafter, the parties entered into a Voluntary Separation and Property Settlement Agreement on April 16, 1983 (hereinafter referred to as "agreement"). The parties finally separated on October 21, 1983 and were divorced on January 6, 1986. [The terms and conditions of the Agreement were incorporated but not merged into the Judgment of Final Divorce.]

Pursuant to paragraph eleven of the Agreement, it was stipulated that [Frederick] ... would pay to [Kathleen] ... on or before the first of each month the sum of One Thousand Four Hundred Fifty Three Dollars ($1,453.00) in unallocated alimony and child support. On January 25, 1984, the Agreement was amended by mutual consent to state that [Frederick] ... would pay $1,545.00 in unallocated alimony and child support. Subsequent to this

amendment, [Frederick] ... unilaterally withheld $300.00 per month for approximately eight months [(April 1 to December 1, 1985)], totaling $2,550.00. [Frederick] ... admits that the total payment amount was reduced by $300.00 when one of the minor children, Lisa, commenced living with [him].... [Frederick later increased the amount withheld per month to an average of over $900 for the period January 1, 1986 until March 1988.][1]

## II. PROCEDURAL HISTORY....

On January 6, 1986, the Circuit Court entered a Final Judgment of Divorce. [As part of the judgment,] the trial Court modified the unallocated alimony and child support payments,.... [Kathleen appealed the judgment on the ground that it violated the parties' agreement not to modify the unallocated support payments.]

On January 29, 1987, the Court of Special Appeals [, in *Kathleen Smith v. Frederick D. Smith,* No. 540, September Term 1986, filed January 29, 1987 (per curiam),] reversed the Circuit Court's decision and held that the trial Judge erred in modifying paragraph eleven of the Agreement. The Appellate Court further ruled that the trial judge erred in retroactively modifying, by cancelling the accumulated arrearages, the portion determined to be child support.

. . . .

On September 29, 1987, [on remand from the Court of Special Appeals] the Circuit Court entered a judgment in favor of [Kathleen] ... for $2,550.00, representing arrearages due and owing for the period from April 1, 1985 until December 1, 1985. [Kathleen then] ... filed a "Motion to Determine Arrearages" for the period of January 1, 1986 through September 1, 1987. [(This motion is the basis for the instant appeal.)] ... [Frederick] ... later [, on January 26, 1988,] filed a "Counter Motion

---

1. The circuit court opinion does not mention this dramatic increase in the amount withheld by Frederick.

to Determine Arrearage and Establish Payment Amount" [under the Agreement. In his "motion" Frederick claimed] ... a credit in the establishment of an arrearage for amounts paid to ... [Kathleen] directly, and paid on behalf of the minor children of the parties to third parties....

Subsequently, on March 14, 1988, [Kathleen] ... filed an Amended Motion to Determine Arrearages ... through March 1988.

Following a hearing on the "motions", the court awarded Kathleen a judgment of $27,365 for the arrearages accumulated from January 1986 until March 1988. The court then allowed Frederick a credit of $28,000 for money spent directly by him for the support of the children during 1985, 1986 and 1987.

## I.

### *Amount of Arrearages*

■ The circuit court judge determined that, as stipulated by the parties, the amount of arrearages due Kathleen under the agreement is $27,365 for the period April 1, 1985 through March 1988. According to the stipulated facts, however, this amount includes the arrearages of $2,550 for the period April 1, 1985 through December 1, 1985, for which Kathleen was granted a previous judgment on September 29, 1987. If the amount has been paid, in granting Kathleen a judgment for the arrearages which accrued prior to December 1, 1985, the court allowed her a double recovery of the $2,550. We hold that the chancellor was "clearly erroneous", Md.Rule 8–131(c), in calculating the arrearages due under the present judgment at $27,365 and we reduce that amount by $2,550 to $24,815 unless the $2,550 has been paid.

## II.

### *Effect of the Non–Modification Clause*

■ In our previous decision, *Smith v. Smith*, No. 540, September Term 1986, filed January 29, 1987 (per curiam),

we expressly determined that "the support provision of paragraph eleven [, which relates to payment of unallocated alimony and child support,] is not subject to court modification." Kathleen asserts that the circuit court, in allowing Frederick to recoup[2] certain expenses made for child support, has, in effect, "modified" the terms of the Agreement and thereby "exceeded this Court's mandate" in *Smith* and

---

**2.** The procedural posture of this case is somewhat confusing but extremely important to the proper outcome. Kathleen's "Motion to Determine Arrearages" was apparently treated by the court as a complaint upon the Agreement, an action *ex contractu.* Frederick's response, "Counter Motion to Determine Arrearages," was treated as a general denial, which did not raise any additional issues by way of a counter-claim. The court then awarded Kathleen a judgment on her complaint and allowed Frederick a credit, by way of "recoupment."

This interpretation of the pleadings appears correct as Kathleen's "motion" demands payment under the Agreement for the period "January 1, 1986 through September 1, 1987" and, therefore, states a cause of action for breach of the Agreement. Frederick's "counter-motion", on the other hand, merely states that he is "claiming ... credit in the establishment of an arrearage." This statement does not raise a counter-claim which would entitle Frederick to an affirmative judgment; rather, it merely states a general denial of the complaint, Md.Rule 2–323(d), and asserts recoupment as a defense, *State v. Hogg,* 311 Md. 446, 457, 472, 535 A.2d 923 (1988).

We note that Maryland does not agree with those jurisdictions which now apparently consider recoupment to be the equivalent of a compulsory counter-claim, *see, e.g., Bridewell v. Peoples Bank of Alabama, Inc.,* 501 So.2d 1244, 1246 (Ala.Civ.App.1985). Maryland recognizes that a defendant can attempt to recover "damages resulting from the same transaction upon which the plaintiff's claim is based," *First National Bank v. Shpritz,* 63 Md.App. 623, 638, 493 A.2d 410 (1985), through either a counter-claim or by way of asserting that issue as a defense. *See State v. Hogg* (Of course if the defendant chooses to proceed by way of recoupment rather than asserting a counter-claim then that party can not obtain an affirmative judgment. *Shpritz,* 63 Md.App. at 638, 493 A.2d 410). Given that Frederick specifically pled recoupment as a defense, we do not reach the subsidiary issue of whether the courts still retain their equitable powers to declare a recoupment where such was not raised in the pleadings by way of a defense or a counterclaim. *See* 2 Poe Pleading and Practice § 616 (Sachs 6th ed. 1970); *Warfield v. Booth,* 33 Md. 63, 72–73 (1870) and cases cited therein. We *do* observe, however, that where the facts upon which the court bases the recoupment are admitted without objection then the deficiency in the pleadings, in not setting forth recoupment as a defense, is waived. *Phil J. Corporation v. Markle,* 249 Md. 718, 725–26, 241 A.2d 718 (1968); *Wathen v. Pearce,* 175 Md. 651, 656, 3 A.2d 486 (1939).

also subverted the rule enunciated in *Quarles v. Quarles,* 62 Md.App. 394, 489 A.2d 559 (1985), that the courts may not modify an unallocated award for alimony and child support where that award, by its terms, is non-modifiable. We do not agree.[3]

Recoupment occurs when "the defendant seeks compensation from the plaintiff for damages resulting from the same transaction upon which the plaintiff's claim is based ...," *First National Bank of Maryland v. Shpritz,* 63 Md.App. 623, 638, 493 A.2d 410 (1985), and the court, upon a finding of damage to both parties, orders a credit to the defendant for the damage caused by the plaintiff. As such, a recoupment does not effect the terms of the Agreement or any future performance made thereunder.

A "modification" to a contract, in contrast to a "recoupment," is made by the parties themselves, and not the courts, *see, e.g., Taylor v. University Nat. Bank,* 263 Md. 59, 282 A.2d 91 (1971); *Thomas v. Hudson Motor Car Co.,* 226 Md. 456, 174 A.2d 181 (1961), as the court is restricted to enforcing the terms of the contract as written by the parties and may not add or delete terms, *Kasten Construction Co. v. Rod Enterprises,* 268 Md. 318, 328–329, 301 A.2d 12 (1973). Furthermore, a modification results in "an abandonment of the original contract and a creation of a new contract." *Linz v. Schuck,* 106 Md. 220, 234, 67 A. 286 (1907).

Given this explanation, it is evident that the circuit court's actions in this case effectuated a recoupment and not a contractually prohibited modification. The "credit" allowed Frederick against Kathleen's judgment has no impact upon their future conduct under the Agreement. Indeed, if Fred-

---

**3.** The parties do not dispute that recoupment is a valid defense in an action to enforce a property settlement agreement. For purposes of completeness, however, we note that a separation agreement is "a contract between the parties and subject to the same general rules governing other contracts ...," *Coffman v. Hayes,* 259 Md. 708, 717, 270 A.2d 808 (1970), including the rule that "recoupment is a valid defense...." *Id.* at 717, 270 A.2d 808.

erick should continue to make direct support expenditures for Lisa, rather than making the agreed payments to Kathleen, Kathleen would still have the right to sue under the Agreement to force Frederick to make the agreed payments under paragraph eleven and Frederick could not rely on the judgment *sub judice* as a defense to a claim for future arrearages. Accordingly, we hold that the circuit court, in allowing Frederick a credit against the arrearages, did not violate our previous mandate in *Smith* in which we determined that, under the terms of the Agreement *sub judice*, the court could not modify the unallocated support payment provision.

Additionally, our finding a recoupment valid under the facts of this case does not subvert our holding in *Quarles* that the courts may not modify an unallocated support award for alimony and child support which, by its terms, is non-modifiable. In *Quarles*, the father was required under the support agreement to pay $800 in unallocated alimony and child support for his former wife, the custodial parent, and the parties' two minor children. He made the specified payments for two years and then unilaterally reduced the payments. In response to the former wife's subsequent petition for contempt he filed a petition to modify the support on the ground that the oldest child had reached majority. This Court affirmed the circuit court's denial of the requested modification and held that the parties had agreed that the payments were non-modifiable and there was no indication in the terms of the agreement that this restriction was to be excused in the event that either child attained their majority. We explained that our intent was merely to enforce the parties' intent as embodied in their agreement. *Id.* 62 Md.App. at 407, 489 A.2d 559.

Unlike the situation in the case *sub judice*, the custodial parent in *Quarles* fully performed her agreed responsibility to raise both of the parties' minor children. Kathleen, however, did not fully abide by the terms of the Agreement; she failed to provide for Lisa. It is this breach by Kathleen which allows Frederick to recoup his expenses. *See*

*Shpritz, supra.* There having been no breach by the custodial parent in *Quarles,* no recoupment could have resulted from the custodial parent's action there to enforce the support agreement. *See id.*

## III.

### *Recoupment*

Given that a recoupment did not violate the express terms of the Agreement, we now consider whether the circuit court erred in its determination that that defense was available under the facts *sub judice.* Preliminarily, we note that Frederick, in his brief, "concedes that credit should not be allowed for payments made to or on behalf of Frederick, Jr." Accordingly, we reverse that portion of the circuit court's order which allowed Frederick credit for such expenses and confine our discussion to the credit allowed for Frederick's expenditures for Lisa.

In *Coffman v. Hayes,* 259 Md. 708, 716, 270 A.2d 808 (1970), wherein "the court was called upon to grant a credit toward arrearages arising under a separation agreement," the Court held that:

> a *" compulsion of circumstances "* coupled with express or *implied consent* on the part of the mother to a mode of payment other than that prescribed in a decree may serve as a basis for giving credit to the father for the period of time that he actually cared for the children.

259 Md. at 716, 270 A.2d 808 (quoting *Bradford v. Futrell,* 225 Md. 512, 518–519, 171 A.2d 493 (1961), a case involving support payments made pursuant to a divorce decree rather than a separation agreement).[4] The Court explained that a "compulsion of circumstances" arises when the custodial parent "voluntarily abandon[s]," *id.* at 716, 270 A.2d 808, a

---

4. This position is in accord with the other jurisdictions which have addressed this issue. *See* Annot., 47 A.L.R.3d 1031 (1973 & Supp. 1988).

child but not where the father acts as "a volunteer," *id.,* in caring for a child.

■ The evidence in the matter *sub judice,* considered in light of the facts discussed in *Coffman,* justifies the circuit court's finding that Frederick was entitled to a credit for the amounts which he spent on Lisa's support and maintenance during the period of January 1, 1986 through March of 1988—the period covered in Kathleen's complaint. Kathleen herself testified that, in April of 1985, she "made ... [Lisa] go live with her father" and there is no indication in the record that Lisa ever returned to her mother's care. This direct admission by Kathleen indicates that Frederick assumed care of Lisa under a "compulsion of circumstances," 259 Md. at 716, 270 A.2d 808, and that he did so with the "express or implied ... consent ... of the mother," *id.; White v. White,* 34 Md.App. 635, 368 A.2d 1061 (1977).

■ As noted, *supra,* however, the evidence only justifies the credit allowed Frederick for the expenses he incurred from January 1, 1986 through March of 1988; it does not support the credit which the chancellor allowed Frederick for support payments made prior to 1986. By the consent judgment of September 29, 1987, Frederick, in effect, waived any defense he may have had, by way of recoupment or otherwise, to the arrearages accrued prior to 1986. The chancellor was, therefore, clearly erroneous, Md. Rule 8–131(c), in his determination that Frederick was entitled to $10,789 for the support payments he made in 1985. This finding, as Kathleen states, is not supported by the evidence in the record.[5]

---

**5.** Our holding that Frederick could not recover any portion of the amount previously included in the consent decree does *not* involve the doctrine of collateral estoppel. Collateral estoppel is an "affirmative defense," to a claim, 27 Federal Procedure, L.Ed. § 62:76 (1984), and must be specifically pled in an answer or it is waived. Md.Rule 2–323(g) (1989). As discussed, *supra,* note 2, Frederick did not file a counter-claim and, consequently, there was no need for Kathleen to plead any defenses, affirmative or otherwise, to Frederick's answer.

Furthermore, to allow a recoupment under these circumstances would be inconsistent with the purposes underlying that equitable principle:

> Recoupment is sometimes spoken of as a rule of strict justice, or as based on the principle that it is just to settle both sides of a transaction at once. It is a method of *preventing circuity of action,* and rests on a principle that to avoid circuity and multiplicity of actions a defendant should be allowed, at his election, to give in evidence matters growing out of the same transaction by way of defense, instead of being required to file a cross action, when this can be done without violation of legal principles or great inconvenience in practice. The doctrine of recoupment does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by the plaintiff to be examined in all its aspects and a judgment to be rendered that *does justice in view of the transaction as a whole.*
>
> Recoupment exists in equity as well as at common law, and has been said to be *equitable in nature. It reduces the claim affirmatively urged so far as in reason and conscience it ought.*

20 Am.Jr.2d *Counterclaim, Recoupment and Setoff* § 6 (1965); *see also State v. Hogg,* 311 Md. 446, 465–66, 535 A.2d 923 (1988). To allow Frederick credit for payments made prior to 1986 does not prevent "circuity of action," *id.,* as the issue of the 1985 arrearages was the subject of a consent judgment between the parties which was not appealed; Frederick should not have been allowed to recoup in this later action that amount awarded as a judgment in a previous action. Furthermore, such credit does not do "justice in view of the transaction as a whole," *id.,* as it permits Frederick to recoup solely for Lisa's care about 60%

---

The issue of the previous judgment was introduced by Kathleen's pleading and as evidence at trial. The chancellor was clearly erroneous in ignoring the conclusive effect of this evidence, since it directly impacts on the credit allowed Frederick by way of recoupment.

of the unallocated support payments designated for Kathleen and both children, hardly an *equitable* outcome.

## IV.

### *The Amount of Credit*

Kathleen also finds fault with numerous expenditures for which Frederick was allowed credit against the arrearages under the support Agreement. We consider each of them.

#### (a) Frederick, Jr.

As discussed, *supra,* the circuit court erred in allowing any credit for Frederick's voluntary expenditures upon Frederick, Jr.; therefore, the amount allowed by way of recoupment must be reduced by the full amount allowed for such expenditures. Because the parties have not provided this Court with an agreed list of such expenditures, on remand the circuit court will determine the appropriate reduction in the credit allowed Frederick. Frederick asserts that this amount is $1,021.55.

#### (b) Life Insurance

The circuit court allowed Frederick credit for premiums he paid on a life insurance policy. Frederick concedes, however, that he is required by paragraph seven of the support agreement to maintain such a policy and, consequently he should not have been allowed credit for doing that which he had agreed to do. We agree.

According to Frederick's calculations, the amount of credit improperly allowed for insurance was $2,211.84, but it is not clear from the record that this is in fact the full amount of credit which the court allowed; therefore, on remand the court must make the appropriate calculations and reduction of the credit.

#### (c) Medical Expenses

■ Kathleen next argues that the circuit court improperly allowed Frederick credit for Lisa's unreimbursed medical expenses. She points out that, similar to the provision in the Agreement for life insurance, paragraph eleven re-

quires Frederick to pay "medical expenses for the children that the insurance does not cover," and the chancellor was bound, by our previous decision, to enforce the Agreement as written. We agree with Kathleen and hold that the chancellor erred in allowing Frederick credit for these expenses. *See Coffman v. Hayes*, 259 Md. at 717, 270 A.2d 808. On remand the circuit court may make the appropriate adjustment. We see no merit to Frederick's position that "[i]t is irrelevant to this analysis that if Mrs. Smith had incurred these costs for Lisa she may have been able to seek reimbursement from Mr. Smith under the Agreement."

### (d)

Finally, Kathleen challenges the credit which the court allowed Frederick for numerous specific expenditures, including one half of Frederick's expenditures for his: mortgage, utilities, home maintenance, fireplace screens, nursery plantings, paint, and Lisa's birthday gifts. She argues that these expenses are not "support payments" within the meaning of the Agreement and, therefore, Frederick should not be allowed to recoup his expenses for items not contemplated in the Agreement. Frederick counters that:

> It was entirely reasonable and proper to compute Lisa's household expenses by taking the total expenses [for Frederick Sr. and Lisa] and dividing by the number of people living at the time in the [ (Frederick's) ] household. This formula is as accurate as any to reflect the proportion of expenses attributable to Lisa.

We disagree with Frederick's formula.

Where, as in the case *sub judice*, a recoupment is allowed as a defense in an action for breach of contract, the defendant is entitled to "a recoupment to the extent of his damages which were the certain result of the breach." *Hammaker v. Schleigh*, 157 Md. 652, 670, 147 A. 790 (1929). This rule, of course, requires the court to examine the underlying contract to determine the nature of the obligation intended and thereby calculate the "certain result of the breach." *Id.* Viewed in the context of a support

agreement this rule means that where the contractual obligations of the original custodial parent are involuntarily shifted to the paying parent, then, in any action by the original custodial parent for arrearages under the contract, the paying parent "will be given credit when the expenditures constitute 'substantial compliance with the spirit and intent of the [agreement or] decree.'" *Bradford v. Futrell,* 225 Md. 512, 518, 171 A.2d 493 (1961) (citations omitted).[6] Any expenditures not made in "substantial compliance with the spirit and intent of the," *id.,* agreement are ignored because they are not "a certain result of the breach," *Hammaker,* 157 Md. at 670, 147 A. 790.[7]

In the case *sub judice,* the parties, in their Agreement, contemplated that Frederick would make support payments

---

**6.** This rule follows logically from the position that recoupment is "based on the doctrine of failure of consideration; it looks at the whole contract, treating it as an entirety, and treating the things done and stipulated to be done by one side as the consideration for the things done and to be done by the other. It must be predicated on a factor which would vitiate a contract either in whole or in part as of the time the contract was made." 20 Am.Jr.2d *Counterclaim, Recoupment, and Setoff,* § 6 (1965). It allows the defendant, for failure of consideration, to avoid his contractual obligation.

Considering the issue in this way, recoupment is not a reimbursement for Frederick's expenditures, rather it represents that amount which Kathleen did not have to spend to support Lisa; therefore, Frederick's actual expenses for Lisa are totally irrelevant. The Court of Appeals position in *Bradford,* however, compels us to look not at Kathleen's gains, but at Frederick's losses. Essentially, the final outcome in this case should be the same, since the losses which Frederick incurs from paying both direct support for Lisa and the full amount of the agreed support payment should equal Kathleen's savings from not having to support her. This of course assumes that Lisa's expenses are computed based upon the parties expectations as embodied in the Agreement.

**7.** Kathleen observes that, unlike the facts *sub judice, Bradford* did not involve the issue of *unallocated* alimony and child support. While this is correct, this Court, in *White v. White,* 34 Md.App. 635, 368 A.2d 1061 (1977), allowed the father to recoup a portion of the expenses he incurred for three of the parties' five children where the court had ordered a lump sum payment to the mother for the support of all five children. We see no difference between a lump sum payment for five children and a payment for two children and one adult.

sufficient to enable Kathleen and the two minor children to reside in the family home (paragraph "Fifth" of the Agreement) and to pursue a life style consistent with a monthly support payment of $1,545 per month. Therefore, under the rule expressed in *Hammaker*, the amount of recoupment allowed should equal that which compensates Frederick for the anticipated financial impact of Lisa's move as determined by the parties' contractual expectations, rather than Frederick's current household expenses.

■ Given the express terms of the Agreement *sub judice*, the anticipated financial impact of Lisa's move is entirely predictable. Kathleen was originally expected to run the family home and provide direct support for herself and the two children. Frederick, on the other hand, was to run a home, support himself, and provide support payments to Kathleen and the children. When Kathleen partially breached the Agreement by her failure to provide the anticipated direct support for Lisa the only new expenditure incurred by Frederick, which can be considered as a "certain result of the breach", *Hammaker v. Schleigh*, 157 Md. at 670, 147 A. 790, is that Frederick must now make direct payments for Lisa's food, clothing, entertainment, etc. There are, however, no additional expenses for housing associated with this change of circumstances; Frederick was expected to run one home and to assist Kathleen in running another and that fact has not been changed. It follows then that the only expenses which Frederick can properly recoup under the existing Agreement are those which he was required to make under the Agreement for Lisa's food, clothing, entertainment, etc., that is, her personal support requirements; housing expenses are not recoverable. Any change in this outcome would require a modification of the Agreement by the parties, in accordance with the terms of that Agreement.

The task which the circuit court judge faces on remand, then, is to determine what share of the unallocated support payment was intended by the parties for Lisa's personal support requirements. That such a determination does not

in itself constitute a modification of the Agreement was made clear by the Court in *Bebermeyer v. Bebermeyer*, 241 Md. 72, 78, 215 A.2d 463 (1965), a case involving a $65 per month unallocated support payment for the mother and the parties' two children. The Court there held that:

> Although the trial court had no power to *modify* the decree of December 21, 1955 ... that court did have the power to interpret the meaning of that decree and of the agreement of September 28, 1955, ratified and confirmed by that decree. In our opinion, a reasonable interpretation of that agreement and of that decree was that one-third of the $65.00 to be paid every two weeks was for the support and maintenance of the wife and the remaining two-thirds was for the support and maintenance of the minor children.

A problem arises in that the trial judge never articulated the formula which he used to calculate the credit allowed Frederick; we have only Frederick's conjecture that the chancellor applied the wrong measure. Therefore, we hold that, even if the chancellor did apply the proper formula for computing the allowable credit, the amount of credit which he allowed Frederick—over $900 per month for Lisa's support or about 60 percent of the total support allocated under the Agreement for Kathleen, Lisa, and Frederick, Jr.—is clearly erroneous, Md.Rule 8–131(c); *Bradford v. Futrell*, 225 Md. at 519, 171 A.2d 493, as the amount that the court allowed Frederick to recoup exceeds "the extent of ... [Frederick's] damages which were the certain result of ...", *Hammaker*, 157 Md. at 670, 147 A. 790, Kathleen's failure to care for Lisa. Accordingly, we remand to the circuit court for a proper determination of that amount.

As a final matter, in light of our holding, *supra*, we need not address Kathleen's argument that no credit should have been allowed for certain enumerated expenses.

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.